Van Voorhis, J.
The conviction of appellant of murder in the second degree should be affirmed unless its correctness is controlled by Miranda v. Arizona (384 U. S. 436). The dispo *342 sition of the appeal depends upon whether the prearraignment confessions of appellant and her re-enactment of the crime should have been excluded for the reason that she was not informed before the law enforcement officers started to question her that she need not answer, that whatever she said might be used against her or that she was entitled to counsel and that, if indigent, she was entitled to have counsel assigned, as required by the Miranda decision. Her trial commenced November 9 and was concluded November 25, 1964. It was, therefore, not subject to Miranda v. Arizona (supra, decided June 13, 1966) unless the courts of New York apply Miranda retroactively beyond the requirements of the Federal Constitution (Johnson v. New Jersey, 384 U. S. 719). The Johnson case leaves the State courts free to apply a greater measure of retroactivity to such decisions as Mapp v. Ohio (367 U. S. 643), Griffin v. California (380 U. S. 609) and Miranda v. Arizona (supra) than the Supreme Court has held to be required by the Fourteenth Amendment to the Constitution of the United States in Linkletter v. Walker (381 U. S. 618), Tehan v. Shott (382 U. S. 406) and Johnson v. New Jersey (supra). Before the latter cases were decided by the Supreme Court, we held that Mapp v. Ohio was applicable to cases on direct appeal to this court (People v. Loria, 10 N Y 2d 368) but that it was not to be applied retroactively in postconviction remedies where the appellate process had been exhausted (People v. Muller, 11 N Y 2d 154). For so long as the posteonviction remedies of habeas corpus and coram nobis were restricted to testing the jurisdiction of the sentencing court over the person of the defendant and the crime charged, or to matters which could not be raised on appeal, the distinction which we drew between People v. Loria and People v. Muller imported a large degree of finality to criminal convictions against the changing winds of legal doctrine. The expansion of postconviction remedies, however, by such Federal and State decisions as Jackson v. Denno (378 U. S. 368), Fay v. Noia (372 U. S. 391), Townsend v. Sain (372 U. S. 293), Sanders v. United States (373 U. S. 1), Brown v. Allen (344 U. S. 443) and People v. Huntley (15 N Y 2d 72) would render a large and increasing number of criminal convictions subject to being vacated even though the defendants *343 had been tried and convicted in accordance with the law as it was understood and applied at the time. The past can seldom he reformed in the image of the present, and it is manifest that not every type of conviction can be set aside where the wisdom of the present does not coincide with that of the past. In view of the expansion of postconviction remedies, the distinction between review by habeas corpus or coram nobis and direct appeal has become less meaningful insofar as finality is concerned.
The Supreme Court said in Johnson v. New Jersey (supra) that law enforcement agencies fairly relied on prior decisions, now no longer binding, in obtaining incriminating statements before Escobedo (Escobedo v. Illinois, 378 U. S. 478) and Miranda (supra) respectively were decided, and stated categorically that “ these decisions should apply only to trials begun after the decisions were announced * * * even though the cases may still be on direct appeal ” (384 U. S. 732-733; italics supplied).
We are aware that the convictions of Miranda, Yignera, Westover and Stewart were reversed or their reversal upheld by the Supreme Court, and that, in this respect, the procedure differed from that considered in Great Northern Ry. Co. v. Sunburst Oil & Refining Co. (287 U. S. 358) and in Chief Judge Cardozo’s address to the New York State Bar Association (55 N. Y. State Bar Assn. Rep. 263, 296-297 [1932]) in that there the existing rule was to be followed in the case at bar coupled with an announcement that in the future the rule would be otherwise. It is true that the defendants in the Miranda cases were themselves tried before June 13, 1966, but, at the same time, the Supreme Court denied certiorari in many other cases of apparently similar import. Quite evidently the Supreme Court was considering its function in establishing the law of the land in regard to such situations, and any seeming inequalities which may thereby have resulted to these particular individuals were considered to be of secondary importance. The effect, regardless of the reversal of the convictions of Miranda and the other defendants, was similar to the pronouncement of an edict that those defendants who were tried before June 13, 1966 are not required by the Federal Constitution to be governed by the Miranda ridings. Although this procedure may have been unusual, it is not unprecedented *344 and bears some resemblance to that adopted by the English House of Lords, for instance, in the issuance of the celebrated McNaughten Rules.
We have endeavored to adapt our State, procedures in such matters as nearly as may be to the Federal practice (cf. People v. Huntley, 15 N Y 2d 72, supra), and in applying the changes in the law effectuated by Miranda v. Arizona (supra) there is no reason on account of which we should go beyond what the Supreme Court has required in applying these rules to prior convictions. Anything held to the contrary in People v. Loria (supra) should be regarded as overruled.
If an issue of voluntariness were involved, as in Haynes v. Washington (373 U. S. 503) or any of our previous New York State decisions, we recognize that the omission to give the warnings prescribed by Miranda during the prearraignment custodial interrogation could properly be invoked “ as part of an involuntariness claim” (Johnson v. New Jersey, supra, p. 730; Davis v. North Carolina, 384 U. S. 737). There is no basis in this record, however, for any possible ruling that appellant’s confessions should have been excluded as involuntary. In affirming, the Appellate Division said (24 A D 2d 499): “In our opinion, under the circumstances here, namely: (1) the defendant’s failure to object to the admission of her confessions on the ground that they had been involuntarily made, and (2) the absence from the trial court’s charge of any instruction concerning the issue of the voluntariness of defendant’s confessions, a Jackson-Denno hearing to determine such issue is not required to be held (People v. Huntley, 15 N Y 2d 72, 77; Jackson v. Denno, 378 U. S. 368).”
Not only does the absence of objection preclude review by this court (People v. Friola, 11 N Y 2d 157, 159-160), but also there is no basis in the record for any contention of involuntariness. A brief review of the circumstances makes this clear.
The victim of this homicide was stabbed with a knife on the street outside of a bar and grill in Hempstead, New York, following an altercation inside just before it closed at 3:00 a.m. on November 20, 1960. The body was discovered at about 3:30 a.m:., and suspicion soon attached to appellant who resided with two other women in an apartment three and one-half blocks away. One of these woman testified that appellant admitted *345 to her that she had committed the homicide on returning to the apartment 10 or 15 minutes after the bar had closed, and appellant’s daughter, who saw her the nest morning, testified that appellant told her that “ she cut a man” because “He kicked me.”
Her confession or confessions to the law enforcement officers, the admission of which is alleged to have constituted error, occurred as follows: She was taken to the police station about three hours after discovery of the homicide, and within 5 or 10 minutes confessed to the whole thing. She thereupon voluntarily went with the police officers to her apartment and showed them the knife with which she said that she had stabbed the deceased. She then accompanied the police officers to the scene of the homicide which she re-enacted for their benefit.
Between 9:00 and 9:15 a.m. at police headquarters, on the morning of the homicide, she was again questioned by detectives and her interrogation reduced to a writing which she signed. Soon afterward a question and answer statement of similar purport was taken by an assistant district attorney before her arraignment. She was arraigned at 12:50 p.m. on a charge of first degree murder. Two days later another statement was taken which was excluded by the Trial Judge under People v. Waterman (9 N Y 2d 561).
The motions to suppress the two prearraignment statements which were admitted into evidence were based exclusively on the Escobedo decision (which the Trial Justice held inapplicable in the absence of any request for counsel) and on failure to give the warnings which were afterwards held to be necessary in Miranda. Defense counsel later moved to strike out the two confessions which had been admitted upon the ground that they “were taken in violation of the defendant’s constitutional rights.” The only constitutional rights asserted in the record are those which have been mentioned. It is undisputed that no request was made for counsel as occurred in Escobedo v. Illinois (378 U. S. 478), People v. Noble (9 N Y 2d 571), nor is it contended that an attorney had been retained to represent her as in People v. Donovan (13 N Y 2d 148), People v. Gunner (15 N Y 2d 226). The circumstance that her daughter presented herself at the police station between 10:30 and 11:00 a.m. on the morning of November 20, after appellant’s oral confession *346 had been completed and her first written statement signed, is an insufficient basis, in itself, on which to invoke these decisions (People v. Hocking, 15 N Y 2d 973). Near the end of the trial, to be sure, defense counsel moved a second time to strike from the record these confessions on this ground and on the ground that “ they were secured by fraud and deceit ” — which apparently referred to the circumstance that one of the detectives had told appellant in the beginning that she might as well admit what she had done inasmuch as otherwise the victim, who she had not been told had died, would be likely to identify her. She may not have known, at that time, that he was dead. No contention is made, however, nor is there evidence that any promise or threat was made to appellant, and the law is well settled that in the absence of such factors mere deception is not enough (People v. Caserino, 16 N Y 2d 255, 259). In United States ex rel. Everett v. Murphy (329 F. 2d 68, 70) the court said: “ The deception of Everett as to Finocchiaro’s survival of the attack might be ignored if it stood alone.” Neither is it evidence of involuntariness of her confessions that there is some evidence that appellant was intoxicated. The officers who took her statements said that, although she had been drinking, her answers to their questions were consecutive and clear. It may well be that if there were evidence that the confessions had been compelled or coerced, evidence of intoxication would be relevant in conjunction therewith. Upon the other hand, in the absence of coercion, the jury might apply the ancient maxim in vino veritas. The fact that she had been drinking bore upon the truth or falsity of her statements but was not, in itself, evidence that they were involuntary. The Trial Justice instructed the jury that they were to take into account the fact that she had been drinking as bearing upon the truth of these statements, and he also correctly charged that it was for them to decide whether intoxication (if she was intoxicated) was such as to render her incapable of harboring the special intent required to sustain murder charges. Similar instructions were given with respect to her mental condition, A mistrial had been declared in 1961 when she collapsed during her first trial, and was sent to Mattea-wan on certificates of physicians that in consequence thereof she was incapable of conducting her own defense. The findings were otherwise when she went to trial in 1964, No defense of insanity *347 was interposed, but the jury were instructed that they were to consider her mental condition, whatever it was, when she gave these statements on November 20, 1960 as bearing upon their veracity. This was correct inasmuch as the voluntariness of the confessions was not involved. These circumstances demonstrate that there is no Escobedo question nor any issue of voluntariness presented by this record, and that the sole ground for reversal would be the retroactive application of the ruling in Miranda v. Arizona (supra). Inasmuch as we hold that decision not to be retroactive in its application, in accordance with the decision by the Supreme Court in Johnson v. New Jersey (supra), the judgment appealed from should be affirmed.