UNITED STATES ex rel. James CARRA-
WAY, Relator-Petitioner,

v.

Daniel McMANN, Warden of Auburn
State Prison, Auburn, New York,
Respondent.

68 Civ. 3137.

United States District Court
S. D. New York.

Jan. 6, 1969.

James Carraway, pro se.

Louis J. Lefkowitz, Atty. Gen. of New York, for respondent; Michael Jaffe, Asst. Atty. Gen., of counsel.

## MEMORANDUM

COOPER, District Judge.

Petitioner, applying *pro se* to this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, is presently confined under a sentence of life imprisonment in Auburn State Prison, New York, following his conviction by a jury for the crime of first degree murder. Petitioner was tried jointly for that offense in 1953 in the former Court of General Sessions, New York County, with co-defendant Thomas Green.

Based upon the papers before the Court and the 1500 page record of petitioner's trial, certain facts are undisputed. At the outset of trial, petitioner and his co-defendant moved for a severance on the ground that each defendant

had made a confession which implicated his co-defendant and that each claimed his confession was illegally obtained through coercive methods employed by the police department.[1] Both motions were denied. An extensive *voir dire* was held regarding the voluntariness of the confessions, following which the court held that question to be an issue of fact for the jury; the confessions were received in evidence.[2] With respect to co-defendant Green's confession, the jury was cautioned that it could only be used in considering the guilt of Green.[3]

After all parties rested, but prior to the summations, the trial judge permitted the case to be reopened and co-defendant Green to take the stand. He recanted his previous testimony that he was innocent and his confession coerced, and again confessed, in substantially the same terms as his original confession, to having participated in the murder. Petitioner Carraway's objection that the jury should be instructed that Green's statements were not binding upon Carraway was overruled, the trial judge stating that what Green testified to while a witness and subject to cross-examination may be used in deciding the guilt or innocence of either or both of the defendants.[4] Carraway was afforded an opportunity, which he exercised, to cross-examine Green.

Following petitioner's summation and out of the presence of the jury, Green withdrew his plea of not guilty and pleaded guilty to second degree murder. Petitioner was convicted of murder in the first degree and sentenced to life imprisonment on March 6, 1953.

The judgment of conviction was unanimously affirmed without opinion by the Appellate Division. People v. Carraway, 20 A.D.2d 968, 249 N.Y.S.2d 679 (1st Dept. 1964).[5] The New York Court of Appeals withheld determination of the appeal and remitted the case to the Supreme Court, New York County, for a hearing pursuant to Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), to determine the voluntariness of his confession introduced against him at his trial. People v. Carraway, 15 N.Y.2d 763, 257 N.Y.S.2d 336, 205 N.E.2d 530 (1965). On June 15, 1965 a *Huntley* hearing was held in the Supreme Court, New York County, and by order dated August 13, 1965 Judge Irwin D. Davidson denied petitioner's motion to exclude his confession as involuntarily made. In an order dated June 16, 1965 Judge Davidson also denied petitioner's application for a writ of error *coram nobis* which alleged co-defendant Green was promised leniency in return for his testimony implicating petitioner. Appeal from said order is noted as still pending in the Appellate Division, First Department.

Subsequently, the New York Court of Appeals granted a motion to restore to the calendar petitioner's direct appeal from his judgment of conviction. People v. Carraway, 19 N.Y.2d 600, 278 N.Y.S.2d 387, 224 N.E.2d 883 (1967). After reargument at which petitioner raised the same contentions now pressed before us on habeas corpus, judgment of conviction was affirmed without opinion. People v. Carraway, 19 N.Y.2d 767, 279 N.Y.S.2d 524, 226 N.E.2d 312 (1967).

Petitioner asserts violations of the Fifth, Sixth and Fourteenth Amendments contending that the trial court committed reversible error in:

I. denying his motion for severance of his trial from that of his co-defendant;

1. Record, vol. 1, pp. 3–6, People v. Carraway and Green, Court of General Sessions, N.Y. County (1953).

2. Record, vol. 2, supra at 858.

3. Record, vol. 2, supra at 1091.

4. Record, vol. 3, supra at 1391, 1398.

5. A motion to dismiss petitioner's first appeal from the judgment of conviction was granted in 1955. People v. Carraway, 285 App.Div. 807, 138 N.Y.S.2d 349 (1st Dept.).

II. permitting reopening of the case so that his co-defendant might give further testimony;

III. improperly instructing the jury as to the extent to which it might consider co-defendant's testimony as evidence against petitioner;

IV. permitting the confessions of petitioner and his co-defendant to be received into evidence;

V. allowing petitioner's signature appearing on an affidavit that he was indigent to be used as a handwriting exemplar.

These claims are considered *seriatim*. For the reasons set forth below, petitioner's application is denied.

I

 Section 391 of the New York Code of Criminal Procedure provides: "Defendants, jointly indicted, may be tried separately or jointly in the discretion of the court." Only where an abuse of that discretion is shown will the trial court's decision be disturbed. See People v. Fisher, 249 N.Y. 419, 164 N.E. 336 (1928); People v. Snyder, 246 N.Y. 491, 496–98, 159 N.E.2d 408 (1927). The United States Supreme Court on two previous occasions has considered the constitutionality of New York cases which found no abuse of discretion in a denial of severance to a defendant implicated by a co-defendant's confession admissible in evidence against the co-defendant only. The Court stated that the question was one of state procedure and beyond its province of review. See Malinsky v. New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029 (1945); Stein v. New York, 346 U.S. 156, 194–196, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953). State procedures do not "run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to

the prisoner at the bar." Stein v. United States, 346 U.S. at 196, 73 S.Ct. at 1098.

 Petitioner asserts, however, that Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) is applicable here. The Supreme Court in *Bruton* held it to be a fundamental principle of evidence, embodied in the confrontation clause of the Sixth Amendment, that statements made without opportunity for cross-examination are admissible only against the person who made them. See also, Douglas v. Alabama, 380 U.S. 415, 418–420, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); Pointer v. Texas, 380 U.S. 400, 403–406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Furthermore, although the jury is admonished not to use statements of one defendant against any other, such limiting instructions are no "adequate substitute for [defendant's] constitutional right of cross-examination." Bruton v. United States, 391 U.S. at 137, 88 S.Ct. 1620, at 1628. These principles pronounced in *Bruton* are to be retroactively applied. See Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

The Second Circuit has indicated that a petitioner is not the victim of "powerfully incriminating extrajudicial statements of a co-defendant" as was *Bruton*, where petitioner's own confession is introduced in addition to the confession of his co-defendant. See United States ex rel. Catanzaro v. Mancusi, 2 Cir., 404 F. 2d 296 (1968). But see, People v. Jackson, 22 N.Y.2d 446, 293 N.Y.S.2d 265, 239 N.E.2d 869 (1968).[6]

We need not rest our decision of petitioner's contention on this ground, however. *Bruton* turns on a denial to that defendant of his Sixth Amendment right of confrontation. Bruton's co-defendant, protected by the Fifth Amendment from having to take the stand,

---

6. Jackson's conviction was reversed pursuant to *Bruton* although his confession was introduced into evidence along with the confession of one of his two co-defendants at their joint trial.

could not be cross-examined with respect to his extrajudicial statements implicating defendant. Here, on the other hand, co-defendant Green chose to testify, thereby affording petitioner his right of confrontation, which he exercised.

■ Failing to bring himself within the ambit of the *Bruton* decision, petitioner's constitutional rights were not infringed by his joint trial.

## II

■■ Petitioner first claims broadly that constitutional error was committed in reopening this case after all parties had rested to permit co-defendant Green to recant his previous testimony. Determination of a motion to reopen rests within the sound discretion of the trial judge. No constitutional right of the petitioner was violated by the granting of co-defendant's motion to reopen.

■ Petitioner urges two further contentions of constitutional error related to the reopening, but based upon the particular circumstances present in this case. First is a claim that co-defendant Green's testimony inculpating both Green and petitioner was secured by the State in return for a promise of leniency and acceptance of a plea of guilty to the lesser offense of murder in the second degree. The issue of whether Green was given such a promise or was induced to testify as he did because of a belief he would thereby receive leniency was considered by the Supreme Court, New York County, at a hearing before Judge Davidson upon petitioner's application for a writ of error *coram nobis*. This issue was resolved against him and the application denied in an order dated September 7, 1965. After a careful examination of the record of that hearing, including Green's testimony there, we can find no ground upon which the presumptively correct State determination of the merits of this factual issue may properly be reexamined.

See 28 U.S.C. § 2254(d) (Supp. III 1965–1967).

■ Additionally, it would appear in any event that petitioner has failed to exhaust the remedies available in the courts of the State with respect to this issue. The appeal from Judge Davidson's order denying petitioner's application is noted as still pending in the Appellate Division, First Department. Although there is considerable confusion in the records as to the reason therefor, suffice it to note that this issue has never been presented to the New York Court of Appeals. Failure to exhaust state remedies as to this claim is not grounds for dismissing this petition *in toto*, however. See United States ex rel. Sniffen v. Follette, 393 F.2d 726 (2d Cir. 1968); United States ex rel. Levy v. McMann, 394 F.2d 402 (2d Cir. 1968).

■ The second claim is that such reopening was error in this case because the jury was never informed that Green was permitted to plead guilty to second degree murder, following his testimony, and petitioner was unable to cross-examine Green as to this issue since Green's guilty plea came after the close of the case. This contention must fail in view of the determination, fairly supported by the record, that no promise of leniency was given Green in return for his testimony and that Green was not induced to testify as he did because of any belief that in return therefor he would receive a lenient sentence. Moreover, petitioner on cross-examination clearly was not foreclosed from inquiring into Green's motivation for his change of testimony. He simply did not do so; nor for that matter did he ever move to reopen the case for the purpose of cross-examining his co-defendant on this score. Finally, the trial judge was at pains in his charge to the jury to point out that "the testimony of an accomplice should be regarded with suspicion, and the jury in considering the weight to be given his testimony should look into * * * his hope of reward because of his testi-

mony, and the motives that might actuate him in testifying." [7]

## III

■ Petitioner contends that the trial judge erred in refusing to instruct the jury that co-defendant Green's testimony denying he had been mistreated by the police was not "binding on the defendant Carraway." The court stated: "This man is now a witness. Whatever he says on the witness stand may be used in deciding the guilt or innocence of either or both of the defendants." [8]

The state defends this judicial instruction as an accurate statement of New York law, citing the New York Code of Criminal Procedure, Sections 393-a and 399. While we question its propriety in view of the fact Green's testimony retracting his claim of coercion never directly related to the voluntariness of petitioner's confession, the correctness of this instruction as a matter of New York law is not the issue before us.

Neither are we faced, as petitioner suggests in Argument III of his Petition, with a co-defendant retracting a defense wholly unrelated to petitioner's defense. The claim of coercion was raised by both defendants, each supporting the testimony of the other. Both alleged the coercion occurred at the same police station, in the same rooms, in the same manner, by the same officers, and within a close and even overlapping time span.

■ The trial judge did not rule that petitioner was bound by the testimony of his co-defendant with regard to this alleged mistreatment. He ruled that the jury could consider this testimony as evidence for or against Carraway. In view of the interrelationship of the evidence respecting both petitioner's and co-defendant's claims of abuse, and, significantly, in view of the fact that in charging the jury on the issue of voluntariness the trial judge never alluded to Green's testimony, we do not find that this instruction deprived pe-

titioner of his right to a fair determination on the issue of voluntariness within the meaning of the due process clause of the Fourteenth Amendment. Whatever error the state court may have committed by the instruction, the defect did not attain constitutional proportions. Cf., United States ex rel. Castillo v. Fay, 350 F.2d 400, 401 (2d Cir. 1965), cert. denied, 382 U.S. 1019, 86 S.Ct. 637, 15 L.Ed.2d 533 (1966).

## IV

Petitioner's contention appears to be that the introduction of his confession into evidence against him was improper. He apparently rests this contention on two bases.

First, he asserts that his confession was involuntary, a claim raised originally at his trial and renewed following Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). At the *Huntley* hearing held in the Supreme Court, New York County, pursuant to the mandate of Jackson v. Denno, both sides rested on the facts adduced in the transcript of trial, aside from brief testimony by Carraway reiterating what was already in the trial record. Following this hearing, Judge Davidson in an order dated August 13, 1965 "found as a matter of law and fact that, beyond a reasonable doubt, the said statement was voluntarily made by defendant [Carraway]."

■ There is nothing in the record to suggest that the *Huntley* hearing was not full and fair, or that the material facts were not adequately developed. Indeed, appellant makes no such claim. We have made a thorough examination of the record of the *Huntley* hearing and of the trial, including the exhaustive *voir dire* held with respect to this issue, and we conclude that the factual determination of voluntariness is more than adequately supported by the record.

Petitioner's claim that his confession came as a result of beatings administered by the police is supported only by

---

7. Record, vol. 3, supra, at 1475.

8. Record, vol. 3, supra at 1398.

his testimony, that of co-defendant's father and girl friend, and the initial testimony of co-defendant. Arrayed against them is the testimony of all others present in the station house on the night of the alleged beating, including reporters, photographers, police officers, an assistant district attorney, third parties there on other matters and still others present for questioning in connection with this case; all denied hearing any unusual sounds, shouting, screams or crying as asserted under oath by co-defendant's father and girl friend. Furthermore, there was testimony from those who observed petitioner soon after his alleged beatings that he showed no visible indication of physical abuse. Moreover, doctors who later examined petitioner in prison testified that they found no evidence of mistreatment.

Nor was petitioner questioned or held incommunicado for a period of time that would raise doubts concerning the voluntariness of his confession. His interrogation from its inception to the time of his confession, including substantial interruptions, did not exceed seven hours. Further, during this same period and on more than one occasion he was in close proximity to and seen by third parties present in the public areas of the station house.

We find no basis for reexamining the presumptively correct State determination of the facts. See 28 U.S.C. § 2254 (d) (Supp. III 1965–1967); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). As indicated previously, there is more than sufficient support for Judge Davidson's finding that beyond a reasonable doubt no beatings, threats or coercion occurred here.

▄▄▄ The legal issue, as the Supreme Court has frequently instructed "is whether the defendant's will was overborne at the time he confessed." See Lynumn v. Illinois, 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 (1963). If compulsion, mental or physi-

cal, is a propelling force inducing a confession, then such confession shall be invalidated. See Culombe v. Connecticut, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). It appears from the record that petitioner may not have been warned prior to his confession of his rights to remain silent and to counsel.[9] We recognize that failure to so advise an accused is a factor to be taken into account in passing on the voluntariness of a confession. However, while the voluntariness test "has become increasingly meticulous through the years," Johnson v. New Jersey, 384 U.S. 719, 730, 86 S.Ct. 1772, 1779, 16 L.Ed. 2d 882 (1966), this failure alone can hardly be sufficient cause for holding his confession involuntary. See United States v. Hughes, 389 F.2d 535 (2d Cir. 1968).

▄▄▄ Second, petitioner asserts that he was not advised of his rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In Johnson v. New Jersey, 384 U.S. at 732–33, 86 S.Ct. 1772, the Supreme Court permitted, but did not require *Miranda* to be applied retroactively by the states. New York does not apply *Miranda* retroactively. See People v. McQueen, 18 N.Y.2d 337, 274 N.Y.S.2d 886, 221 N.E.2d 550 (1966); People v. Carraway, 19 N.Y.2d 767, 279 N.Y.S.2d 524, 226 N.E.2d 312 (1967). Thus, this issue is foreclosed to petitioner whose trial ended in 1953.

Petitioner's assertion that New York's decision not to apply *Miranda* retroactively creates an *ex post facto* law because prior New York decisions had applied certain other recent Supreme Court rulings retroactively is frivolous.

## V

▄▄▄ It is petitioner's final contention that the use as a handwriting sample of petitioner's signature on his affidavit that he was destitute of means violated his Fifth Amendment privilege

9. See Record of the *Huntley* Hearing, People v. Carraway, pp. 9–11, Supreme Court, New York County, June 15, 1965.

against self-incrimination and the Equal Protection Clause, since but for his poverty he would not have been required to sign his name in order to secure the services of an attorney. This argument is without merit because the privilege against self-incrimination does not extend to handwriting, and a handwriting exemplar may be compelled of a defendant without violation of the Fifth Amendment. See Gilbert v. State of California, 388 U.S. 263, 266–67, 87 S. Ct. 1951, 18 L.Ed.2d 1178 (1966). Additionally, and for this reason, petitioner fails to show invidious discrimination against him by reason of his economic state.

For the reasons set forth above, the petition for a writ of habeas corpus is denied in all respects.

So ordered.