**UNITED STATES of America**
v.
**Robert Henry TORQUATO and Constance Torquato.**
**Crim. No. 69–67.**

United States District Court,
W. D. Pennsylvania.

Sept. 14, 1970.

Richard L. Thornburgh, U. S. Atty., *Guy Goodwin*, Atty., Dept. of Justice, Washington, D. C., Henry G. Barr, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Robert B. Ivory, Pittsburgh, Pa., for Constance Torquato.

A. C. Scales, Greensburg, Pa., for Robert Henry Torquato.

## OPINION

WEBER, District Judge.

Defendants, husband and wife, were found guilty after trial by jury of violating the provisions of 18 U.S.C. § 1503 by corruptly endeavoring to influence a petit juror who was then sitting in the

trial of a civil action in this court. The civil case was an F.E.L.A. action of Pryor v. Monongahela Connecting Railroad. The jury was selected on Tuesday, October 10, 1967. On October 18, 1967, Mrs. Janoss, a juror, reported to the trial judge that her husband's employer, Rev. Msgr. Bassompierre, had called her during the trial and told her that the plaintiff in the pending action was a good man and needed help. Thereupon a mistrial was declared and an investigation begun. Rev. Msgr. Bassompierre readily admitted the communication to Mrs. Janoss (as a result of which he was indicted, entered a plea and was sentenced). He testified that he knew nothing about Pryor or the pending case but had acted solely at the request of a friend, Rev. Kobylarz, who had telephoned to inform him that Mrs. Janoss was serving on the Pryor jury and to ask him to inform Mrs. Janoss that Pryor was a good man who needed help. He agreed to do this and reported back to Rev. Kobylarz that he had done so.

Rev. Kobylarz readily admitted making the request to Rev. Msgr. Bassompierre. He denied any knowledge of Pryor or his case except that he was requested to convey the message to Rev. Msgr. Bassompierre for transmittal to Mrs. Janoss, the juror. For a long time he refused to divulge the source of the request to him by falsely stating that he did not know or couldn't remember the person who called him, but upon being indicted and informed by his own counsel that he had no privilege against such disclosure, he named the defendants, Mr. Robert Torquato and Mrs. Constance Torquato, whom he knew well and with whom he had frequent contacts, as the source of the requests. He named both defendants as having contacted him on the matter to pose the request, to remind him of it, and to learn if the message had been conveyed.

Pryor, the plaintiff in the pending action, lived in a different locality and did not know Rev. Msgr. Bassompierre, Rev. Kobylarz, or the Torquatos. Pryor's legal counsel in the F.E.L.A. action was the law firm of Evans, Ivory and Evans.

The Torquatos were found guilty on the direct testimony of Rev. Kobylarz and the corroborating circumstantial evidence of connection between them and Rev. Kobylarz and between them and the law firm representing the plaintiff Pryor. Defense evidence consisted of an attack on the credibility of Rev. Kobylarz, alibi evidence, reputation evidence, and evidence that a telephone call from Mrs. Torquato to Rev. Kobylarz during the trial of the case was for the purpose of securing background information on the juror, Mrs. Janoss, rather than for transmitting the message which Rev. Kobylarz and Rev. Msgr. Bassompierre testified to receiving and transmitting in the same form as ultimately received by Mrs. Janoss. Defendants did not take the stand in their own defense.

Many grounds have been advanced in support of the motion of each defendant for a new trial. They are largely identical although some are directed to the problems arising from a joint trial. Unnecessary complications arose from the presence of Attorney Robert Ivory as defense counsel for defendant Constance Torquato, but this was a choice freely made by that defendant, concurred in by her husband and co-defendant and reaffirmed by them after the court advised them of its ruling on Mr. Ivory's belated motion to withdraw, its possible consequences, and of the court's willingness to continue the trial if they wished to secure new counsel.

The most strongly contested feature of the trial was the admission into evidence of records of telephone calls between certain phone numbers listed in the names of parties having connection with this case. The early attack on this evidence was a pretrial attack based on alleged statutory prohibitions on obtaining this type of evidence. This member of the Court held an evidentiary hearing and found that the telephone company records were properly produced before the grand jury by subpoena. With that established the long argument about the exclusion of records of phone calls ended, and we faced the objection of relevancy and materiality.

The phone contacts are in the following groups:

(1) Rev. Robert Kobylarz No. _to_ Msgr. Bassompierre No.
4 calls October 16 to 18, 1967

(2) Rev. Robert Kobylarz No. _to_ Robert Torquato No.
9 calls October 16 to November 7, 1967

(3) Robert Torquato No. _to_ Rev. Kobylarz No.
A large number of calls between September 10, 1967
to November 14, 1967

(4) Robert Torquato phone No. _to_ Evans, Ivory and Evans
Law Office Phone No.
8 calls September 23, 1967 to October 20, 1967

(5) Evans, Ivory and Evans Law Office phone No. _to_
Robert Torquato phone No.
1 call September 13, 1967

(6) Robert Torquato phone No. _to_ Attorney Ivory resi-
dence phone No.
9 calls September 20, 1967 to October 18, 1967

---

The calls involving Rev. Kobylarz and Msgr. Bassompierre were corroborated by the testimony of Monsignor Bassompierre and Rev. Kobylarz. Monsignor Bassompierre admitted receipt of the request to contact a juror in the Pryor case from Father Kobylarz, admitted contacting the juror as requested, and it was shown that he had entered his plea and received his sentence for the offense.

Rev. Kolbylarz admitted the calls to Monsignor Bassompierre, admitted making the request to contact a juror, and admitted that he had falsely concealed the source of the request to him for a long period of time while investigation was proceeding. He finally, upon being indicted and being informed by his attorney that this was not a privileged communication, revealed that the contacts to him had been from both Mr. and Mrs. Torquato.

The great objection was posed to the admission of records of calls between the Torquato number and the number listed for the law firm of Evans, Ivory and Evans, and the Attorney Ivory residence. Evans, Ivory and Evans was the law firm representing the plaintiff Pryor in the lawsuit being tried from October 10th to October 18th.

Defendants argue that if these were admissible in support of motive, they were irrelevant and immaterial because proof of motive was not necessary. While motive may not be an essential element of this particular offense, we find it relevant. People do not ordinarily act without some motive. Motive is what prompts a person to act. It is a state of mind. It is generally provable only by circumstantial evidence. Proof of a motive to act tends to some degree to render it probable that the act was committed. Lack of any proof of motive renders it less likely that such an act was committed.

Kong v. United States, 216 F.2d 665 [9th Cir., 1954] cited by defendant, is not pertinent. There *Kong* contended that it was error not to instruct the jury that his "purpose" in seeking to influence the juror must be shown to be corrupt. The opinion in the court's own heading says: "D. *The 'purpose' Kong had in seeking to influence the juror is immaterial.*", and further, "it is immaterial that he had the highest motive." (p. 668)

Similarly, United States v. Laughlin, 226 F.Supp. 112 [D. D.C.1964], requiring that the government establish the

identity of the persons making the call, is not in point, the circumstantial evidence of phone connections between the parties was not sufficient to satisfy the requirements in a perjury case of direct and positive evidence of the falsity of defendant's sworn statement, "and circumstantial evidence thereof is insufficient, no matter how persuasive." (p. 114)

The Evans, Ivory and Evans law firm had a financial interest in the outcome of the Pryor law suit, where the attempt to influence a juror was made. The chain of connection from the juror leads back, by positive and direct evidence through Msgr. Bassompierre, and through Rev. Kobylarz, to both defendants, Mr. and Mrs. Torquato, and the connection of all these parties has been corroborated by phone calls between their residences. The objected evidence concerns a series of phone calls between the listed number for the Torquato residence, the Evans, Ivory and Evans number, and the attorney Ivory residence number, all around the critical dates, before the trial began, during the trial, and during the investigatory phase following the trial. Its effect is to close the circle of circumstantial evidence around the defendants.

Thus there is a multiple stranded connection established between one party having a pecuniary interest in a result and parties identified by direct evidence with attempting to achieve that result.

■ The Courts admit such evidence. "They (telephone company records of calls) are generally held to be admissible in evidence to establish a connection between the defendant and some other person, when properly identified." Broome v. Simon, 255 F.Supp. 434 [W.D.La., 1966] See also: Duncan v. United States, 197 F.2d 935 [5th Cir. 1952].

Similarly in United States v. Gallo, 123 F.2d 229, p. 231 [2nd Cir., 1941], the Court said:

"The mere fact that telephone calls were made between the residences of co-defendants, without proof as to the identify of the persons calling or the subject matter of the conversations, may be of very slight probative value but we think it is not incompetent. Blakeslee v. United States, 1 Cir., 32 F.2d 15, 17; United States v. Radov, 3 Cir., 44 F.2d 155, 157; Brink v. United States, 6 Cir., 60 F.2d 231, 234; Wood v. United States, 5 Cir., 84 F.2d 749, 751; see United States v. Easterday, 2 Cir., 57 F.2d 165, 167, Wigmore, Evid. 3rd Ed. § 1530."

■ Defendants attempted to counter the significance of the calls between defendant's phone number and the law office number by placing a member of the law firm on the stand to explain that the calls were made to him by defendants and were all related to solicitations for political contributions, and he produced evidence of several political contributions which were made to or forwarded through defendants as a result of such calls. This evidence not only supported the government's argument of motive but corroborates the records of the phone calls. When Mr. Evans testified that he could recall no other subject of discussion on these calls except political contributions and that the defendants had never been employed by the firm, the door was opened for the government to produce another list of nine phone calls between the Torquato residence and the residence of Mr. Ivory, another partner of the firm, all made in the evening, between September 20, 1967 and October 18, 1967, all of considerable length, and particularly concentrated during the days when the Pryor trial was in progress. It also led to the introduction of rebuttal testimony contradicting the testimony of Mr. Evans by way of two witnesses who had heard defendant Robert Torquato claim of his working for or being a "silent partner" in the Evans, Ivory and Evans law firm. While this connection was remote in time, it was within the period covered by Mr. Evans' denial. Its admission by reopening or in rebuttal, rather than in the government's case in

chief, is properly within the court's discretion. United States v. Plata, 361 F. 2d 958 [7th Cir., 1966]. Morgan v. United States, 111 U.S.App.D.C. 127, 294 F.2d 911 [1961]; Massey v. United States, 358 F.2d 782 [10th Cir., 1966]; United States ex rel. Carraway v. McMann, 297 F.Supp. 390 [S.D.N.Y.1969]; Hale v. United States, 410 F.2d 147 [5th Cir., 1969]. These statements are not inadmissible under those cases dealing with the claims of an alleged agent to establish agency. They were admissible as statements of a party defendant inconsistent with testimony produced by that defendant's own witness at the time of trial. It is immaterial when the statements were made. See 2 Jones on Evidence, 5th Ed., Secs. 334 et seq.; Wigmore on Evidence, 3rd Ed., Secs. 1048, 1049. The statement of defendant Robert Torquato did not implicate his wife, the co-defendant, and Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 [1968] does not apply.

██ Several matters complained of were matters within the discretion and control of a trial judge. The record will show extensive prior consideration of these matters, such as the allowable extent of voir dire examination. We follow the presumption that the jurors will obey their oath, and answer questions truthfully. There is no right in counsel to select jurors on voir dire, but only to secure an impartial jury. Brown v. New Jersey, 175 U.S. 172, 20 S.Ct. 77, 44 L.Ed. 119 [1899]. Extensive voir dire has its dangers. How else but in an extended voir dire examination in the Pryor case was it learned that the juror Mrs. Janoss had a husband who was employed as a janitor in a church whose pastor was Reverend Monsignor Bassompierre? While we did ask if any juror would be more inclined to believe the testimony of a Catholic priest as opposed to the testimony of a witness who is not a Catholic priest, we refused extended inquiry into the religious affiliation of the jurors. We refused to sequester the jury and found no evidence that they would be influenced by newspaper accounts of the trial, which were examined by the court and found to be accurate reporting of testimony received in open court. In summary we believe that on the matters now raised the record will show that during trial counsel had full opportunity to present their arguments outside the hearing of the jury and that the Court's exercise of discretion was done only after full consideration and deliberation.

A large number of additional reasons for new trial have been advanced. We have noted them all and we take occasion to note that most of them were fully covered by extensive arguments during trial. The court gave full opportunity to counsel to argue these points away from the hearing of the jury and the trial transcript witnesses extensive arguments before the court on these points in which the court at that time rendered its considered judgment after weighing the contentions of the parties. We find none of them sufficient to require reversal of our prior conclusion and to grant the new trial as prayed for.

One matter that could not be ruled on beforehand was the final summation of the prosecution. It is complained that the prosecutor magnified the seriousness of the offense. We find ourselves in agreement that the corruption of the judicial process is a very serious offense. In general the government prosecutor performed his function of advocate for the government with vigor, conviction, and enthusiasm as he properly should. We find nothing in his remarks sufficient to support a conclusion that defendants were denied a fair trial by reason thereof.

The Motions of Defendants for New Trial will be denied.