■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RASAUN SANDERS, Also Known as BOO CRACKS, Appellant. [976 NYS2d 205]—

Appeal by the defendant from a judgment of the County Court, Westchester County (Hubert, J.), rendered May 27, 2010, convicting him of manslaughter in the first degree and gang assault in the first degree, upon his plea of guilty, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant, while acting in concert with several others, stabbed the 16-year-old victim to death. He was charged, inter alia, with murder in the second degree. Following the partial denial of his motion to suppress certain inculpatory statements he made to law enforcement officials, the defendant decided to plead guilty to manslaughter in the first degree and gang assault in the first degree in exchange for concurrent terms of 20 years of imprisonment. During the plea colloquy, the prosecutor asked the defendant if he understood that, as a condition of this plea, he was waiving the right to appeal his conviction and sentence to "the Appellate Division Second Department," if he had discussed the waiver with his attorney, and if he was willing, in consideration of this plea, to waive that right voluntarily. The defendant answered in the affirmative to all three questions. Thereafter, the defendant was sentenced in accordance with the terms of his plea agreement.

On appeal, the defendant contends that the County Court erred in denying portions of his suppression motion. However, the defendant is precluded from raising that contention on appeal by virtue of his valid appeal waiver.

In order to be enforceable, a waiver of the right to appeal must be made knowingly, voluntarily, and intelligently (*see People v Lopez*, 6 NY3d 248, 255 [2006]; *People v Seaberg*, 74 NY2d 1, 10 [1989]). In determining whether a waiver is valid, all the relevant facts and circumstances surrounding the waiver,

including the nature and terms of the agreement, as well as the age, experience, and background of the accused, must be considered (*see People v Bradshaw*, 18 NY3d 257, 264 [2011]; *People v Seaberg*, 74 NY2d at 11). Because a trial court must take into account all the relevant facts and circumstances of the myriad defendants who appear before it and the permutations of various plea deals, it need not engage in any particular litany or catechism in satisfying itself that a knowing, voluntary, and intelligent appeal waiver has been entered (*see People v Bradshaw*, 18 NY3d at 264). The trial court, with the benefit of having the opportunity to observe the defendant before it, is in the best position to make this determination in the first instance (*see id.*; *People v Callahan*, 80 NY2d 273, 280 [1992]).

In *People v Lopez* (6 NY3d 248, 254 [2006]), as part of his plea colloquy, and following an explanation of the trial rights forfeited by virtue of a guilty plea, the court said to the defendant, " 'You also understand you're giving up your right to appeal, that is, to take to a higher court than this one any of the legal issues connected with this case? You understand that?' " The defendant answered, " 'Yes.' " The defendant did not sign a written appeal waiver. The Court of Appeals held that the waiver was effective, noting that the nature of the right being waived was adequately described (*see id.* at 257).

Similarly, in *People v Torres* (236 AD2d 642 [1997]), the court asked the defendant if his attorney had explained to him that the waiver of appeal meant he could not take the case to a higher court, and the defendant replied that counsel had, and that he had consented to it. This colloquy, this Court held, while "terse," was "enough" to conclude that the waiver was made knowingly, voluntarily, and intelligently (*id.*).

Consistent with our precedent and as guided by *Lopez*, this same colloquy, advising a defendant that he or she has the right to appeal his or her conviction and sentence to the Appellate Division, Second Department, has been repeatedly upheld by this Court as resulting in a valid waiver (*see People v Arias*, 100 AD3d 914 [2012]; *People v Gonzalez*, 93 AD3d 679 [2012]; *People v Brown*, 78 AD3d 723 [2010]; *People v Ramos*, 77 AD3d 773 [2010]; *People v Buniek*, 52 AD3d 621 [2008]; *People v Reina*, 35 AD3d 509 [2006]; *People v Rosas*, 34 AD3d 605 [2006]; *People v Sherrill*, 27 AD3d 588 [2006]; *People v Carden*, 27 AD3d 573 [2006]; *People v Eaton*, 14 AD3d 577 [2005]; *People v Williams*, 13 AD3d 661 [2004]; *People v Mercer*, 204 AD2d 741 [1994]). Although the dissent concludes that these cases are of "limited precedential value" because they do not "contain any description of the plea colloquy at issue," it is well settled that a court

may take judicial notice of its own records in prior cases (*see Matter of Allen v Strough*, 301 AD2d 11, 18 [2002]; *New York State Dam Ltd. Partnership v Niagara Mohawk Power Corp.*, 222 AD2d 792, 794 n [1995]; *Sam & Mary Hous. Corp. v Jo/Sal Mkt.Corp.*, 100 AD2d 901, 902 [1984]; *People v Singleton*, 36 AD2d 725 [1971]).

While the words "higher court" were not used in this instance, as they were in *Lopez* and *Torres*, reference was made to the Appellate Division, Second Department, which is a higher court, and the one to which the defendant would have had the right to appeal directly had he not waived his right to appeal. There is no distinction between the two references. Nevertheless, the dissent posits that a nonlawyer would not understand what the right to appeal to the Appellate Division would mean. But, the defendant in this case was 27 years old and "no stranger to the criminal justice system" (*People v Korona*, 197 AD2d 788, 790 [1993]; *People v Graham*, 177 AD2d 505, 506 [1991]), having multiple prior convictions, including a federal conviction and a New York state felony conviction, the latter of which resulted in his being adjudicated a second violent felony offender. The age, experience, and background of the defendant all support the County Court's determination that he understood his appellate rights (*see People v Arias*, 100 AD3d 914 [2012]). Contrary to the dissent's suggestion, our conclusion that the defendant understood the nature of the right to appeal, in part, based on his background, is not speculative. The Court of Appeals has explicitly permitted the consideration of a defendant's background (*see People v Bradshaw*, 18 NY3d at 260; *People v Seaberg*, 74 NY2d at 11), and where, as here, the defendant is 27 years old and has multiple prior convictions, a court may fairly infer that he understands what it means to have the right to appeal to the Appellate Division, Second Department (*see People v Griffin*, 195 AD2d 766, 767 [1993]). Notably, in this case, the defendant exercised that right by filing, pro se, with this Court, a notice of appeal and requesting the appointment of counsel.

Accordingly, since the defendant validly waived his right to appeal, appellate review of the denial of his suppression motion is precluded, and the judgment must be affirmed. Rivera, J.P., Chambers and Lott, JJ., concur.

Hall, J., dissents, and votes to reverse the judgment and grant that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials: I respectfully dissent from the majority's determination, first, because I find that the defendant did not validly waive his right to appeal.

Additionally, in my view, the defendant did not knowingly, intelligently, and voluntarily waive his right to seek appellate review of the hearing court's suppression ruling. Furthermore, I believe that the hearing court erred in failing to suppress certain statements made by the defendant to law enforcement officials.

In *People v Lopez* (6 NY3d 248 [2006]), the Court of Appeals expressed that "[b]ecause only a few reviewable issues survive a valid appeal waiver, it is all the more important for trial courts to ensure that defendants understand what they are surrendering when they waive the right to appeal. Giving up the right to appeal is not a perfunctory step" (*id.* at 256).

Thus, a waiver of the right to appeal is effective only so long as the record establishes that it was made knowingly, intelligently, and voluntarily (*see People v Bradshaw*, 18 NY3d 257, 264 [2011]; *People v Lopez*, 6 NY3d at 256; *People v Calvi*, 89 NY2d 868, 871 [1996]). "An appellate waiver meets this standard when a defendant has 'a full appreciation of the consequences' of such waiver" (*People v Bradshaw*, 18 NY3d at 264, quoting *People v Seaberg*, 74 NY2d 1, 11 [1989]). For instance, a defendant must comprehend that an appeal waiver "is separate and distinct from those rights automatically forfeited upon a plea of guilty" (*People v Lopez*, 6 NY3d at 256; *see People v Bradshaw*, 18 NY3d at 264). Although a "trial court need not engage in any particular litany when apprising a defendant pleading guilty of the individual rights abandoned, it must make certain that a defendant's understanding of the terms and conditions of a plea agreement is evident on the face of the record" (*People v Lopez*, 6 NY3d at 256).

Here, the entire colloquy regarding the waiver of the defendant's right to appeal was as follows: The prosecutor asked the defendant, "[d]o you understand that as a condition of this plea you are waiving the right to appeal your conviction and sentence to the Appellate Division Second Department?" The defendant responded, "[y]es." The prosecutor then asked, "[h]ave you discussed this waiver of the right to appeal with your attorney?," and the defendant replied, "[yes]." Finally, the prosecutor asked, "[i]n consideration of this negotiated plea do you now voluntarily waive your right to appeal your conviction and sentence under this indictment?," and the defendant responded, "[y]es."

In my view, this colloquy is insufficient to establish that the defendant knowingly, intelligently, and voluntarily waived his right to appeal. Indeed, the defendant's understanding of the nature of his right to appeal is not apparent on the face of the record. Neither the prosecutor nor the plea court explained to

the defendant the nature of his right to appeal. That is, the defendant was never informed of what the right to appeal actually means. The plea court made no effort to determine whether the defendant fully appreciated the consequences of the appeal waiver (*see People v Bradshaw*, 18 NY3d at 259), and failed to ensure that the defendant grasped the minimal information pertaining to the appeal waiver that the prosecutor provided during the plea colloquy (*see People v Hernandez*, 96 AD3d 783, 783 [2012]). In addition, the defendant did not execute a written waiver detailing the rights he would be giving up by waiving his right to appeal (*cf. People v Ramos*, 7 NY3d 737 [2006]).

The majority relies heavily on *People v Nicholson*, a companion case to *Lopez*. In *Nicholson*, the defendant was advised during the plea colloquy as follows: " 'You also understand you're giving up your right to appeal, that is, to take to a higher court than this one any of the legal issues connected with this case? You understand that?' " (*People v Lopez*, 6 NY3d at 254). The defendant responded in the affirmative. The Court of Appeals found that the record in *Nicholson* demonstrated a knowing and intelligent waiver of the right to appeal (*see id.* at 257). Significantly, in *Nicholson* and *People v Torres* (236 AD2d 642 [1997]), another case on which the majority relies, the record contained at least some explanation in plain terms of the meaning of the right to appeal.

In my view, the plea colloquy found to be sufficient in *Nicholson* is the absolute minimum that must be conveyed to a defendant in order for the right to appeal to be validly waived. It is also my opinion that the plea colloquy here falls short of the minimum standard in *Nicholson*. At the plea proceeding, the prosecutor did not, as the court did in *Nicholson*, explain that the defendant's right to appeal included the right to take his case to a higher court to raise any legal issues in connection with the case (*cf. People v Lopez*, 6 NY3d at 254). Furthermore, the prosecutor did not impress upon the defendant that, by waiving his right to appeal, his conviction would be final (*cf. People v Bradshaw*, 18 NY3d at 266 [discussing *People v Ramos*, 7 NY3d 737 (2006)]).

Rather, the prosecutor advised the defendant that, as a condition of this plea, he was waiving his "right to appeal [his] conviction and sentence to the Appellate Division Second Department." While the terms "right to appeal" and "Appellate Division Second Department" may be widely known to judges, lawyers, and other members of the legal community, there is no indication on this record that, from these terms, the defendant understood the nature of the rights he was surrendering by waiving his right to appeal.

The majority posits that there is no distinction between the words "higher court" and "Appellate Division, Second Department." On this point, I respectfully disagree, but not merely on the basis of a semantical distinction. From the words "higher court," a defendant has the impression that there is some other court, with authority over the court in which he or she is pleading guilty, that could possibly review the legality of his or her case. The concept of a "higher court" is much more understandable to a person lacking legal training than is a reference to the Appellate Division, Second Department. To a nonlawyer, the words "Appellate Division, Second Department" are simply jargon.

The majority makes the valid observation that the defendant is no stranger to the criminal justice system, and that his age, experience, and background factor into the determination of whether he validly waived his right to appeal (*see People v Seaberg*, 74 NY2d at 11). However, given the plea colloquy on this record, the fact that the defendant has multiple prior convictions does not lead me to the conclusion that the defendant was aware of his right to appeal and the significance of waiving it (*cf. People v Graham*, 177 AD3d 505 [1991]). Indeed, whatever information the defendant was, or was not, provided with regard to his right to appeal in those prior criminal proceedings is not in this record. As a result, this Court is forced to speculate that the defendant gained an understanding of the nature of his right to appeal from his prior contacts with the criminal justice system. I am not comfortable with making a determination as to whether a defendant validly waived the important right to appeal based on such speculation.

I also acknowledge that this Court has upheld the validity of appeal waivers involving colloquies similar to the one at issue here (*see e.g. People v Arias*, 100 AD3d 914 [2012]; *People v Brown*, 78 AD3d 723 [2010]; *People v Ramos*, 77 AD3d 773 [2010]; *People v Buniek*, 52 AD3d 621 [2008]; *People v Rosas*, 34 AD3d 605 [2006]; *People v Sherrill*, 27 AD3d 588 [2006]; *People v Williams*, 13 AD3d 661 [2004]). Those decisions, however, do not contain any description of the plea colloquy at issue and, thus, in my view, are of limited precedential value. In any event, it is my opinion that those decisions fall below the minimum standard set forth in *Nicholson*.

Accordingly, I find that the defendant's understanding of the nature of his right to appeal is not evident on the face of the record (*see People v Lopez*, 6 NY3d at 256). Thus, I find that the purported waiver of the defendant's right to appeal is invalid and, as a result, does not preclude review of the contentions raised in his appellate brief.

The defendant contends that the hearing court erred in denying that branch of his omnibus motion which was to suppress certain statements he made to law enforcement officials. During the plea colloquy, immediately after the perfunctory discussion of the waiver of the right to appeal, the prosecutor, addressing defense counsel, asked, "[i]n further consideration of this negotiated plea, [defense counsel], do you withdraw all motions made by you whether pending or decided?" Defense counsel replied, "[y]es, withdrawn." The prosecutor did not address the defendant at all with respect to the withdrawal of all motions, both pending and decided.

Thus, the defendant did not expressly agree to withdraw all motions, both pending and decided. Rather, his attorney did. Significantly, however, there is no indication on the record that the defendant even understood the rights he was giving up by his attorney withdrawing all motions, both pending and decided. Neither the prosecutor nor the plea court made any attempt to explain to the defendant that, by his attorney withdrawing all motions both pending and decided, he would be giving up his right to seek appellate review of the suppression ruling (*cf. People v Esajerre*, 35 NY2d 463, 465 [1974] [prior to the defendant withdrawing his motion to suppress, the Assistant District Attorney enumerated some of the possible rights the defendant might be giving up by withdrawing the motion]). Furthermore, the plea court failed to conduct a sufficient inquiry to determine whether the defendant understood that his plea was conditioned on his withdrawal of all motions, both pending and decided, and that the defendant himself agreed to such condition (*see People v Balkum*, 71 AD3d 1594, 1595 [2010]; *cf. People v Toye*, 264 AD2d 401, 401-402 [1999]).

Just as a waiver of the right to appeal will be effective only so long as the record establishes that it was made knowingly, intelligently, and voluntarily (*see People v Bradshaw*, 18 NY3d at 264; *People v Lopez*, 6 NY3d at 256), a waiver of the right to seek appellate review of a suppression ruling will be effective only so long as it was made knowingly, intelligently, and voluntarily (*see People v Williams*, 55 AD3d 759 [2008]; *People v Castillo*, 208 AD2d 944 [1994]; *People v Holder*, 166 AD2d 720 [1990]; *People v Williams*, 143 AD2d 162, 163 [1988]). On this record, I cannot conclude that the defendant knowingly, intelligently, and voluntarily waived his right to seek appellate review of the suppression ruling. Thus, as I see it, the defendant is not precluded from contending that the hearing court erred in denying that branch of his omnibus motion which was to suppress certain statements he made to law enforcement officials.

Testimony elicited at the suppression hearing established that the defendant was arrested in connection with the stabbing death of the victim on June 15, 2009, at approximately 2:00 p.m. The defendant was taken to police headquarters and, at approximately 3:20 p.m., Detective Anthony Mitchell read the defendant his *Miranda* warnings (*see Miranda v Arizona*, 384 US 436, 444-445 [1966]) from a pre-printed form, and the defendant signed the form. The defendant then denied any involvement in the incident. Upon further discussion, the defendant stated that he had heard that others were involved in the incident, and that others had stabbed the victim.

At some point thereafter, an agent from the Federal Bureau of Investigation (hereinafter the FBI agent), who had been helping the police investigate gang activity, came into the interview room. The FBI agent informed the defendant of the FBI's involvement "in terms of the gang angle," the FBI's concerns, and the penalty the defendant could be facing. Specifically, the FBI agent told the defendant that he could be prosecuted federally if he was involved in the homicide, and that he might be a candidate for the death penalty. The defendant said nothing in response, and the FBI agent left the interview room.

Detective Mitchell continued to talk with the defendant until approximately 5:30 p.m., when a Detective Ossipo entered the interview room. After Detective Ossipo arrived, the defendant admitted to stabbing the victim. Subsequently, at approximately 7:00 p.m., the defendant made a videotaped statement, after being read his *Miranda* rights again.

The hearing court denied that branch of the defendant's omnibus motion which was to suppress the above-mentioned statements. While the hearing court acknowledged that the FBI agent's statement regarding the death penalty was "not the gentlest nudge the Court had ever heard," it concluded that the statement was not coercive. However, I find that the FBI agent's statement, which, in essence, threatened the defendant with the possibility of death, was coercive and, as a result, the above-mentioned statements to law enforcement officials were involuntarily made.

"Evidence of a written or oral confession, admission, or other statement made by a defendant with respect to his participation or lack of participation in the offense charged, may not be received in evidence against him in a criminal proceeding if such statement was involuntarily made" (CPL 60.45 [1]; *see People v Mateo*, 2 NY3d 383, 413 [2004], *cert denied* 542 US 946 [2004]). Pursuant to CPL 60.45 (2) (a), a confession is "involuntarily made" when it is obtained "by means of any . . . improper

conduct or undue pressure which impaired the defendant's physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement" (CPL 60.45 [2] [a]). "To determine voluntariness, courts review all of the surrounding circumstances to see whether the defendant's will has been overborne" (*People v Mateo*, 2 NY3d at 413; *see People v Anderson*, 42 NY2d 35, 41 [1977]). Where a defendant's will has been overborne and his or her capacity for self-determination has been critically impaired, the use of a defendant's confession will offend due process (*see Culombe v Connecticut*, 367 US 568, 602 [1961]; *People v Anderson*, 42 NY2d at 41; *People v Aveni*, 100 AD3d 228, 237 [2012]). Moreover, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment" (*Colorado v Connelly*, 479 US 157, 167 [1986]).

"[W]hen interrogating a suspect, the police may, as part of their investigatory efforts, deceive a suspect, and any resulting statement will not be suppressed for that reason alone" (*People v Aveni*, 100 AD3d at 238; *see People v Pereira*, 26 NY2d 265, 268-269 [1970]; *People v McQueen*, 18 NY2d 337 [1966]). "However, even with a voluntary, knowing, and intelligent waiver of one's *Miranda* rights, there are boundaries the police cannot cross during an interrogation" (*People v Aveni*, 100 AD3d at 238). That is, while deception may be used to obtain a statement, police conduct must not be so "fundamentally unfair as to deny due process" (*People v Tarsia*, 50 NY2d 1, 11 [1980]; *see People v Aveni*, 100 AD3d at 238; US Const Amends V, XIV; NY Const, art I, § 6; CPL 60.45 [1]).

In my analysis of this issue, I find that the FBI agent coerced the defendant's confession by threatening him with the possibility of receiving the death penalty. The FBI agent's threat was false, as the defendant did not actually face the potential of receiving the death penalty, but this falsehood is not the sole basis for my determination. The defendant was threatened, by the FBI agent, with the possibility of death. This threat was used to overcome the defendant's will, which is so "fundamentally unfair as to deny due process" (*People v Tarsia*, 50 NY2d at 11; *see* NY Const, art I, § 6; CPL 60.45 [1], [2] [a]; *People v Aveni*, 100 AD3d at 238). Faced with the threat of the death penalty, the defendant's ability to make a choice as to whether or not to make a statement was severely undermined (*see* CPL 60.45 [2] [a]).

Although the interaction between the defendant and the FBI agent was relatively brief, it can be inferred from the record

that the FBI agent's threat was the catalyst that prompted the defendant to admit to stabbing the victim. The defendant was interviewed at 3:20 p.m. and denied stabbing the victim at that time. At some point between 3:20 p.m. and 5:30 p.m., the FBI agent entered the interview room and threatened the defendant with the possibility of facing the death penalty. The defendant then admitted to stabbing the victim at approximately 5:30 p.m. This demonstrates that the FBI agent's threat placed undue pressure on the defendant, which undermined his ability to make a choice as to whether or not to make a statement (see CPL 60.45 [2] [a]).

The People have the burden of proving beyond a reasonable doubt that the defendant's statements were voluntary (see People v Anderson, 42 NY2d at 38; People v Griffin, 81 AD3d 743, 744 [2011]). In my opinion, the People failed to meet that burden. Accordingly, in my view, the hearing court erred in denying that branch of the defendant's omnibus motion which was to suppress the above-mentioned statements to law enforcement officials, specifically, the defendant's admission made in the interview room at approximately 5:30 p.m. on June 15, 2009, and the videotaped statement made at 7:00 p.m. that evening. Consequently, I vote to reverse the judgment, and grant that branch of the defendant's omnibus motion which was to suppress the above-mentioned statements to law enforcement officials.