[992 NYS2d 297]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMARR BROWN, Appellant.

Second Department, September 10, 2014

### APPEARANCES OF COUNSEL

*Jamarr Brown*, pro se, and *Lynn W.L. Fahey*, New York City, for Jamarr Brown, appellant.

*Kenneth P. Thompson, District Attorney*, Brooklyn (*Leonard Joblove, Lori Glachman* and *Jill Oziemblewski* of counsel; *Aron Gerstel* on the brief; *Gregory Musso* on the memorandum), for respondent.

### OPINION OF THE COURT

Skelos, J.P.

The defendant, who was convicted of attempted murder in the second degree, upon his plea of guilty, seeks a reduction in his sentence, in the interest of justice, on the ground that it was excessive. During the plea allocution, the defendant purportedly waived his right to appeal, which waiver, if valid, would bar review of his claim that his sentence was excessive (*see People v Lopez*, 6 NY3d 248, 256 [2006]). As the Court of Appeals has observed, "an appeal waiver made as a condition of a plea arrangement facilitates the desirable objective of prompt, effective resolution of criminal litigation" (*id.* at 255). Due to ambiguous or incomplete oral colloquies between defendants and the courts

or the People regarding such waivers, it is frequently the case that instead of producing the intended benefit of finality, an appeal waiver merely injects into a criminal appeal an additional and difficult issue, i.e., the validity of the waiver. The purpose of appeal waivers would be better served if greater attention were given to the colloquies used in taking such waivers. Indeed, because "[g]iving up the right to appeal is not a perfunctory step" (*id.* at 256), the Court of Appeals has "underscore[d] the critical nature of a court's colloquy with a defendant explaining the right relinquished by an appeal waiver" (*id.* at 253). The purpose of this opinion is to encourage deliberation by the trial courts in the taking of appeal waivers, with the hope that the laudable purpose of such waivers will be achieved, and that defendants will be benefitted through a better understanding of the significance of the fundamental right they are being asked to waive and the consequences of doing so.

The defendant, the father of the complainant's then-two-year-old child, went to the complainant's home to spend time with the child. An argument ensued among the defendant, the complainant, and the defendant's mother and aunt, who were also present. While the complainant was holding the child, the defendant stabbed the complainant's finger with a butter knife. The knife went through the complainant's finger and lodged in the back of the child's head. The child was transported to the hospital, where he was placed in a medically induced coma and underwent surgery to remove the knife, which was touching his brain stem. Based upon this conduct, the defendant ultimately pleaded guilty to attempted murder in the second degree, admitting that, with intent to cause the complainant's death, he had attempted to cause her death.

During the plea proceeding, the following colloquy occurred between the Supreme Court and defense counsel regarding the defendant's waiver of his right to appeal:

> "THE COURT: . . . [Defense counsel], you have discussed with your client the waiver of appeal and he's executed one?
>
> "[DEFENSE COUNSEL]: I will do that."

This is the only reference on the record to the defendant's waiver of his right to appeal.

The defendant executed a written waiver of the right to appeal, which provided:

> "I hereby waive my right to appeal. I execute this

waiver *after* being advised by the court and my attorney of the nature of the rights I am giving up. I have been advised of my right to take an appeal (CPL 450.10), to prosecute the appeal as a poor person and to have an attorney assigned in the event that I am indigent, and to submit a brief and/or argue before an appellate court on any issues relating to my conviction and sentence.

"I make this waiver voluntarily, knowingly and of my own free will" (emphasis added).

The waiver form is also signed by defense counsel and the Supreme Court.

The defendant was thereafter sentenced, in accordance with the plea agreement, to, inter alia, a determinate term of imprisonment of nine years. In asserting that this sentence was excessive, the defendant argues, initially, that his purported waiver of his right to appeal was invalid. We agree.

A criminal defendant's right to have a judgment of conviction and sentence, which results in a substantial infringement upon his or her liberty, reviewed by an appellate court is fundamental and significant (*see People v Yavru-Sakuk*, 98 NY2d 56, 59 [2002]; *People v Harrison*, 85 NY2d 794, 796 [1995]; *People v Seaberg*, 74 NY2d 1, 7 [1989]; *see also* CPL 450.10; *People v Pollenz*, 67 NY2d 264 [1986]). Nevertheless, a defendant may waive the right to appeal as a condition of a guilty plea (*see People v Lopez*, 6 NY3d at 255; *People v Seaberg*, 74 NY2d at 10).[1] "Because only a few reviewable issues survive a valid appeal waiver, it is . . . important for trial courts to ensure that defendants understand what they are surrendering when they waive the right to appeal" (*People v Lopez*, 6 NY3d at 256).

Indeed, "[a] waiver of the right to appeal is effective only so long as the record demonstrates that it was made knowingly, intelligently and voluntarily" (*People v Lopez*, 6 NY3d at 256; *see People v Bradshaw*, 18 NY3d 257, 264 [2011]; *People v Callahan*, 80 NY2d at 280). "An appellate waiver meets this standard when a defendant has 'a full appreciation of the consequences' of such waiver" (*People v Bradshaw*, 18 NY3d at 264,

---

1. Certain appellate claims may not be waived "because of a larger societal interest in their correct resolution" (*People v Callahan*, 80 NY2d 273, 280 [1992]). These claims include constitutional speedy trial claims, challenges to the legality of a sentence, and issues regarding the defendant's competency to stand trial (*see People v Lopez*, 6 NY3d at 255; *People v Callahan*, 80 NY2d at 280; *People v Seaberg*, 74 NY2d at 9).

quoting *People v Seaberg*, 74 NY2d at 11; *see People v Elmer*, 19 NY3d 501, 510 [2012]).

Further, an appeal waiver is the intentional and voluntary relinquishment or abandonment of "a known right that would otherwise survive a guilty plea" (*People v Lopez*, 6 NY3d at 257; *see People v Ahmed*, 66 NY2d 307, 311 [1985]) and is to be distinguished from the forfeiture of certain claims that do not survive the entry of a plea of guilty, which occurs by operation of law (*People v Lopez*, 6 NY3d at 256-257). It is the responsibility of the judge presiding over the plea and waiver to make it clear to the defendant that an appeal waiver " 'is separate and distinct from those rights automatically forfeited upon a plea of guilty' " (*People v Bradshaw*, 18 NY3d at 264, quoting *People v Lopez*, 6 NY3d at 256). Thus, an appeal waiver is not valid where, for example, the court lumps the waiver of the right to appeal in with "the panoply of trial rights automatically forfeited upon pleading guilty," such as by misadvising the defendant: "[W]hen you plead guilty you waive your right of appeal" (*People v Lopez*, 6 NY3d at 257 [internal quotation marks omitted]).

The right to appeal need not be waived in order for a plea of guilty to be valid (*see People v Seaberg*, 74 NY2d 1 [1989]). Accordingly, a defendant does not validly waive his or her right to appeal where the colloquy suggests that "waiving the right to appeal [is] mandatory rather than a right which the defendant [is] being asked to voluntarily relinquish" (*People v Pelaez*, 100 AD3d 803, 803 [2012]), such as where a defendant is told: "[Y]ou're going to have to waive your right to appeal both the plea and the sentence. Do you understand that?" (*People v Ayala*, 112 AD3d 646, 646 [2013] [internal quotation marks omitted]).

> "The determination as to whether [the] particular waiver satisfies [the above-stated] requirements must be made, in the first instance, by the trial court, which is in the best position to assess all of the relevant factors, including the nature and terms of the agreement, the reasonableness of the bargain, and the age and experience of the accused" (*People v Callahan*, 80 NY2d at 280).

However, "before a waiver of the right to appeal may be enforced" by the Appellate Division, "the record must be examined to ensure that the waiver was voluntary, knowing and intelligent" (*id.* at 283). Thus, it is the obligation of the trial court to " 'make certain that [the] defendant's understanding'

of the waiver . . . 'is evident on the face of the record' " (*People v Bradshaw*, 18 NY3d at 265, quoting *People v Lopez*, 6 NY3d at 256; *see People v Callahan*, 80 NY2d at 280).

While these general principles seem simple enough, their application, in terms of determining when an oral colloquy or combined oral colloquy and written waiver are sufficient, can be difficult. In the absence of a thorough, on-the-record exploration of a defendant's understanding of the appeal waiver, the determination as to its validity frequently turns on highly nuanced facts (*compare People v Maracle*, 19 NY3d 925 [2012], *with People v Hidalgo*, 91 NY2d 733 [1998]). Such nuanced determinations have been criticized as being inconsistent (*see generally People v Bradshaw*, 18 NY3d at 268 [Read, J., dissenting]). It may therefore be helpful to trial courts and the People, in their attempts to secure valid waivers of the right to appeal, for us to review particular circumstances in which a defendant's purported waiver of the right to appeal has been found invalid. The examples referenced are by no means exhaustive. Nevertheless, they serve to underscore the importance of avoiding mere perfunctory attention to the appeal waiver colloquy.

Before conducting that review, however, it is important to emphasize that " 'a trial court need not engage in any particular litany' or catechism in satisfying itself that a defendant has entered a knowing, intelligent and voluntary appeal waiver' " (*People v Bradshaw*, 18 NY3d at 265, quoting *People v Lopez*, 6 NY3d at 256; *see People v Callahan*, 80 NY2d at 280). Further, factors individual to each defendant, such as the defendant's "age, experience and background," may be relevant in assessing the validity of a particular appeal waiver (*People v Bradshaw*, 18 NY3d at 264-265 [emphasis omitted]; *see People v Callahan*, 80 NY2d at 283; *People v Seaberg*, 74 NY2d at 11; *People v Sanders*, 112 AD3d 748 [2013]; *People v Charles S.*, 102 AD3d 896 [2013]). Thus, applications of general principles in this area may vary depending upon the individual circumstances of the defendant. However, the crux of the inquiry remains whether the record reflects a knowing, intelligent, and voluntary waiver (*see People v Bradshaw*, 18 NY3d at 264; *People v Lopez*, 6 NY3d at 256).

While the Court of Appeals has indicated that it is a good practice to obtain a written waiver of the right to appeal (*see People v Lopez*, 6 NY3d at 257), overreliance by trial courts on such written waivers, as evinced by the present case, has led to problems in securing valid waivers of the right to appeal. Even

where a written waiver is executed by the defendant, "a knowing and voluntary waiver cannot be inferred from a silent record" (*People v Callahan*, 80 NY2d at 283). In other words, a written waiver is not a complete substitute for a proper colloquy supervised by the trial judge (*see People v Keiser*, 100 AD3d 927, 928 [2012]; *People v Bradshaw*, 76 AD3d 566, 569 [2010], *affd* 18 NY3d 257 [2011]; *see generally People v Elmer*, 19 NY3d 501, 510 [2012]; *People v Callahan*, 80 NY2d at 283). While

> "[a] detailed written waiver can *supplement* a court's on-the-record explanation of what a waiver of the right to appeal entails, . . . a written waiver 'does not, standing alone, provide sufficient assurance that the defendant is knowingly, intelligently and voluntarily giving up his or her right to appeal as a condition of the plea agreement' " (*People v Keiser*, 100 AD3d at 928 [emphasis added], quoting *People v Bradshaw*, 76 AD3d at 569; *see People v Elmer*, 19 NY3d at 510; *People v Crawford*, 110 AD3d 916 [2013]; *People v Vasquez*, 101 AD3d 1054 [2012]).

Thus, an appeal waiver generally will not be valid unless the trial court ascertains on the record that the defendant signed the written waiver *and* that he or she "was aware of its contents" (*People v Callahan*, 80 NY2d at 283; *see People v Elmer*, 19 NY3d at 510), including, "the implication of the appellate rights he [or she] was waiving" (*People v Grant*, 83 AD3d 862, 863 [2011]; *see People v McCaskell*, 206 AD2d 547, 548 [1994]). The content of the written waiver is relevant to the determination as to whether it adequately supplements the oral colloquy. The written waivers this Court has reviewed in the past several years cover a broad spectrum. Some written waivers do not include any explanation of the nature of the right to appeal or the consequences of waiving that right, and, thus, do not adequately supplement a deficient oral colloquy. Others contain a detailed advisement in that regard, and as such, provide an appropriate supplement to the oral colloquy. Still others fall into a gray area and provide opportunity for inconsistency.

In *People v Ramos* (7 NY3d 737, 738 [2006]), the defendant executed a written waiver which "explained the appellate pro-

cess."[2] He was also told by the trial court that he was waiving "any and all rights to appeal" such that there not only would be no trial, but there would be no appeal, and thus, that the conviction and sentence were "now final" (*People v Bradshaw*, 18 NY3d at 266 [quoting colloquy from plea allocution in *Ramos*]). The Court of Appeals held, in *Ramos*, that the defendant's waiver of the right to appeal was effective because "any ambiguity" in the oral colloquy was cured by the detailed written waiver of the right to appeal (*People v Ramos*, 7 NY3d at 738).

By contrast, where the trial court merely asked the defendant to sign a written waiver of the right to appeal and asked whether he "understood what it meant," this Court held that "[the] record discussion [did] not demonstrate that the defendant 'grasped the concept of the appeal waiver and the nature of the right he was forgoing' " (*People v Vasquez*, 101 AD3d at 1054-1055, quoting *People v Bradshaw*, 18 NY3d at 267).

Thus, when the defendant executes a written waiver, the trial court must engage in some on-the-record discussion with the defendant regarding the waiver of his or her right to appeal. The discussion should be more extensive than a simple confirmation that the defendant signed the waiver and a conclusory statement that the defendant understood the waiver or was executing it knowingly and voluntarily. While a terse colloquy may sometimes be sufficient in cases involving written waivers (*see People v Ramos*, 7 NY3d at 738), in order to ensure that the defendant's appeal waiver will be effective and not rise or fall on highly nuanced facts, it is advisable for the trial courts to engage in a comprehensive colloquy, which clearly places on the record the defendant's understanding of the nature of the right to appeal and the consequences of waiving it (*see People v Crawford*, 110 AD3d 916 [2013]; *People v Vasquez*, 101 AD3d at 1054-1055; *People v Keiser*, 100 AD3d at 928; *People v Grant*, 83 AD3d at 863; *People v McCaskell*, 206 AD2d at 548). In that manner, the trial court can be satisfied that the defendant's decision to waive the right to appeal was the product of free and informed

---

**2.** The written waiver executed in *Ramos*, as revealed in *Bradshaw*, in which an identical waiver was used (*see People v Bradshaw*, 18 NY3d at 267), advised the defendant, like the waiver in the present case, that he had a "right to take an appeal (CPL 450.10), to prosecute the appeal as a poor person and to have an attorney assigned in the event that [he was] indigent, and to submit a brief and/or argue before an appellate court on any issues relating to [his] conviction and sentence" (18 NY3d at 270 [Read, J., dissenting]).

deliberation (*see People v Calvi*, 89 NY2d 868, 871 [1996]), and the appellate court can reach the same determination upon a review of the record.

Additionally, whether or not there is a written waiver, it will not be sufficient for the trial court to defer to the defendant's off-the-record conversations with defense counsel by merely confirming with defense counsel that he or she has discussed the waiver of the right to appeal with the defendant, and that defense counsel believes the defendant understood the waiver or executed it knowingly and voluntarily (*see People v Oquendo*, 105 AD3d 447, 448 [2013]). To rely solely on the representation of counsel is contrary to the Court of Appeals' instruction that it is the responsibility of the trial court to "at least satisfy itself on the record that the waiver complies with the procedural and integrity-of-process safeguards expressed in [the Court of Appeals'] precedents" (*People v Calvi*, 89 NY2d at 871). As such, "some *judicial examination* of the waiver itself with a *manifestation expressed on the record*, as may be appropriate, is necessary to show satisfaction of [those] protocols" (*id*. [emphasis added]; *cf. People v Tyrell*, 22 NY3d 359 [2013]). Where the trial court merely defers to defense counsel's statement that counsel has, in an off-the-record conversation, advised the defendant of the nature of the right to appeal and the significance of waiving that right, it cannot generally be said that the court has made "some judicial examination of the waiver itself" (*People v Calvi*, 89 NY2d at 871; *see People v Oquendo*, 105 AD3d at 448; *People v Nicholson*, 101 AD3d 904, 905 [2012]).

Even where a trial court does not rely completely upon the written waiver form or upon defense counsel to explain the appeal waiver to the defendant, such waivers have frequently been found invalid where the court's "terse colloquy at the plea allocution failed to sufficiently advise the defendant of the nature of his right to appeal" (*People v Salgado*, 111 AD3d 859, 859 [2013]; *see People v Bradshaw*, 18 NY3d at 265-266; *People v Nugent*, 109 AD3d 625, 625-626 [2013]; *People v Gheradi*, 68 AD3d 892, 893 [2009]; *People v Boustani*, 300 AD2d 313, 314 [2002]). Generally, it will be insufficient merely to advise a defendant: "Now, you understand by pleading guilty you are waiving . . . your right to appeal; do you understand that?" (*People v Boustani*, 300 AD2d at 314 [internal quotation marks omitted]). Rather, the court should provide some explanation of the nature of the right that the defendant is being asked to waive. After all, a waiver is an "intentional relinquishment or abandon-

ment of a *known* right" (*People v Ahmed*, 66 NY2d 307, 311 [1985] [emphasis added]; *People v Henriquez*, 3 NY3d 210, 224 [2004]). The best way to ensure that the record reflects that the right is known and intentionally relinquished by the defendant is to fully explain to the defendant, on the record, the nature of the right to appeal and the consequences of waiving it. Further, the court should be careful not to lead a defendant to believe that certain issues might survive a waiver when, in fact, they do not (*see People v Loper*, 115 AD3d 875, 877-878 [2014]).

The extent of the explanation required, again, may often depend upon the individual circumstances of the defendant. In *People v Sanders* (112 AD3d 748 [2013]), in which there was no written waiver, this Court held that the defendant knowingly and voluntarily waived his right to appeal where

> "the prosecutor asked the defendant if he understood that, as a condition of [his] plea, he was waiving the right to appeal his conviction and sentence to 'the Appellate Division Second Department,' if he had discussed the waiver with his attorney, and if he was willing, in consideration of [his] plea, to waive that right voluntarily" and the defendant answered in the affirmative (*id.* at 748).

That decision turned on the particular circumstances of the defendant, as this Court reasoned: "where, as here, the defendant is 27 years old and has multiple prior convictions, a court may fairly infer that he understands what it means to have the right to appeal to the Appellate Division, Second Department" (*id.* at 750).

In *People v Bradshaw*, another case turning on the particular circumstances of the defendant, the Court of Appeals found the defendant's appeal waiver invalid where he executed a written waiver and was advised by the trial court that "an appeal waiver 'means, the conviction here is final, that there is not a higher court you can take [the case] to' " (18 NY3d at 261). When the trial court asked the defendant whether he understood this explanation of the appeal waiver, the defendant failed to respond to that inquiry (*see id.*). The Court of Appeals reasoned that the trial court had not "confirmed whether defendant comprehended its terse explanation of the nature of the appeal waiver" and "did not inquire of defendant whether he understood the written waiver or whether he had even read the waiver before signing it" (*id.* at 261-262). The Court found this procedure "particularly troubling given defendant's background and

history of mental illness" (*id*. at 265). Specifically, the defendant had no prior felony record and during the course of the criminal action, the defendant had been subject to four examinations pursuant to CPL 730.30, two of which found the defendant incompetent to stand trial (*see id*. at 266). The Court indicated that the

> "knowledge that defendant was a first-time felony offender who had been ordered to submit to article 730 examinations . . . should have alerted the trial court not only to give defendant a thorough explanation of the appeal waiver but also to make sure that defendant fully grasped the nature of this fundamental right that he was forgoing" (*id*.).

While there is no "particular litany" or catechism required to obtain a valid waiver of the right to appeal (*People v Lopez*, 6 NY3d at 256; *see People v Bradshaw*, 18 NY3d at 265), and although the extent of the information that must be provided in order to secure such a waiver varies with the defendant's individual circumstances and is entrusted to the discretion of the trial courts (*see People v Bradshaw*, 18 NY3d at 264-265; *People v Sanders*, 112 AD3d 748 [2013]), experience teaches us that the trial courts frequently do not truly exercise the discretion with which they have been entrusted. Rather, the trial courts often utilize standard terse or abbreviated oral colloquies for all defendants, without regard to the particular circumstances, background, and experience of the defendant entering the plea of guilty. As noted above, and demonstrated in *Ramos* and *Bradshaw*, the same or similar oral colloquy and written waiver can produce an appeal waiver that is valid as to one defendant and invalid as to another defendant. All too frequently, the combination of a terse oral colloquy or overreliance on a written waiver, together with the trial court's failure to thoroughly explore on the record the defendant's particular circumstances, compels the Appellate Division to find that an appeal waiver was invalid (*see e.g. People v Bradshaw*, 18 NY3d at 265-266; *People v Salgado*, 111 AD3d 859 [2013]; *People v Crawford*, 110 AD3d 916 [2013]; *People v Nugent*, 109 AD3d at 625-626; *People v Bouton*, 107 AD3d 1035 [2013]; *People v Oquendo*, 105 AD3d at 448; *People v Vasquez*, 101 AD3d at 1054; *People v Nicholson*, 101 AD3d at 905; *People v Keiser*, 100 AD3d at 928; *People v Grant*, 83 AD3d at 863; *People v Gheradi*, 68 AD3d at 893; *People v Boustani*, 300 AD2d at 314).

Accordingly, while giving all due deference to the Court of Appeals' instruction that the trial courts be entrusted with discre-

tion in determining, in the first instance, whether an appeal waiver is knowing and voluntary, we suggest that it would be best practice to provide all defendants with a deliberate and thorough on-the-record explanation of the nature of the right to appeal and the consequences of waiving that right (*see e.g.* Association of Justices of the Supreme Court of the State of New York, Bench Book for Trial Judges—New York § 10:2 [2013]). A court should engage in this practice irrespective of whether the defendant has executed a written waiver of the right to appeal. In this manner, the overreliance on written waivers will be mitigated and the trial courts and the People are more likely to ensure that the appeal waivers defendants agree to as a condition of their plea agreements will be enforced by appellate courts. More significantly, this practice will provide defendants with the utmost protection of their valued right to appeal. On the other hand, perfunctory appeal waiver colloquies, which do not evince a free and informed decision by the defendant, serve only to defeat the intended purpose of appeal waivers as they are no more than a pathway to future litigation.

Generally, such a thorough explanation should include an advisement that, while a defendant ordinarily retains the right to appeal even after he or she pleads guilty, the defendant is being asked, as a condition of the plea agreement, to waive that right.[3] Ideally, a defendant should then receive an explanation of the nature of the right to appeal, which essentially advises that this right entails the opportunity to argue, before a higher court, any issues pertaining to the defendant's conviction and sentence and to have that higher court decide whether the conviction or sentence should be set aside based upon any of those issues. The defendant should also be told that appellate counsel will be appointed in the event that he or she were indigent. The trial courts should then explain the consequences of waiving the right to appeal, i.e., that the conviction and sentence will not receive any further review, and shall be final. The trial courts must be sure to obtain, on the record, an affirmative response from the defendant that he or she understands the rights as

---

**3.** The trial courts should be careful not to suggest that the defendant possesses a right to appeal only when he or she goes to trial, such as by advising a defendant: "If you went to trial . . . and lost, you would have the right to appeal this case to a higher Court" (*People v Taylor*, 105 AD3d 778, 778 [2013] [emphasis omitted]; *see People v Foster*, 87 AD3d 299, 303-304 [appeal waiver invalid where defendant was advised that "if he were to be 'tried and convicted,' he would have the right to appeal, but that he was now giving up that right"]).

explained, that the defendant is giving up those rights, and that the defendant is doing so voluntarily after discussing same with counsel. The mere explanation of the right to appeal and the consequences of a waiver without an affirmative response from the defendant is insufficient to effect a valid waiver (*see People v Bradshaw*, 18 NY3d at 265-266). We are mindful of the time demands on our trial courts, which are burdened with heavy calendars, and recognize that such a thorough colloquy is not necessary in every case to secure a valid waiver of the right to appeal. Nevertheless, the benefit to be derived therefrom by defendants, who are asked to waive a fundamental right, by the People, who have bargained for a waiver of the defendant's right to appeal, and by appellate courts faced with determining the validity of such waivers, outweighs any burden imposed on the trial courts by a slight increase in the length of the plea proceedings.

■ Turning to the present case, the defendant's purported waiver of his right to appeal was invalid. There was no discussion on the record between the Supreme Court and the defendant regarding the defendant's waiver of his right to appeal. Rather, the court merely deferred to defense counsel by asking him whether he had discussed the waiver with the defendant and whether the defendant had executed a written waiver. Indeed, the record reflects that defense counsel had not, at that point, discussed the appeal waiver with the defendant and the defendant had not executed the written waiver. Yet, following the execution of the written waiver, there was no further discussion of the appeal waiver on the record. The court did not even provide the defendant with a terse, on-the-record explanation of the nature of the right to appeal, such as that it entailed the right to bring any issues in his case to a higher court or to the Appellate Division, Second Department.

Although the record contains a written waiver signed by the defendant, defense counsel, and the Supreme Court, the subsequent record is otherwise silent. As previously noted, "a knowing and voluntary waiver cannot be inferred from a silent record" (*People v Callahan*, 80 NY2d at 283). The court did not ascertain on the record whether the defendant had read the waiver or discussed it with defense counsel, or whether he was even aware of its contents. Further, although the written waiver expressly provided that the court had informed the defendant about the nature of his right to appeal, that representation is contradicted by the oral colloquy. In light of the lack of any oral

colloquy regarding the appeal waiver, the waiver would likely be unenforceable even as against an experienced defendant. Here, however, the defendant's background warranted a more thorough explanation, as the present offense was the first felony conviction for the defendant, whose education was limited to "[s]ome [h]igh [s]chool."

Under these circumstances, "despite defendant's execution of a written waiver of the right to appeal, he did not knowingly, intelligently or voluntarily waive his right to appeal as the record fails to demonstrate a 'full appreciation of the consequences of such waiver' " (*People v Elmer*, 19 NY3d at 510, quoting *People v Bradshaw*, 18 NY3d at 264; *see People v Callahan*, 80 NY2d at 283; *People v Crawford*, 110 AD3d 916 [2013]; *People v Grant*, 83 AD3d at 863; *People v McCaskell*, 206 AD2d at 548; *People v Rozo*, 196 AD2d 514, 515 [1993]). Accordingly, we consider the merits of the defendant's excessive sentence claim.

A sentence that is within the permissible statutory range may be modified if it is unduly harsh or severe under the circumstances or if there was a failure to observe the principles of sentencing (*see People v Delgado*, 80 NY2d 780 [1992]; *People v Suitte*, 90 AD2d 80 [1982]). Absent a valid waiver of the right to appeal,[4] the Appellate Division may exercise this power to modify a sentence even where the defendant pleaded guilty and received the sentence for which he or she bargained (*see People v Thompson*, 60 NY2d 513, 519-520 [1983]).

▄ Here, however, a reduction of the defendant's sentence in the interest of justice is not warranted. For the offense to which the defendant pleaded guilty, he could have received a sentence of up to 25 years of imprisonment (*see* Penal Law § 70.02 [3] [a]). Instead, the term of imprisonment imposed was closer to the minimum of five years (*see id.*). Although the defendant expressed remorse for the injury to his son and has taken responsibility for his actions, these factors do not militate in favor of further leniency when balanced against the serious nature of the crime. The record also indicates that the defendant had a criminal history, and that he had committed previous acts of domestic violence against the complainant. Considering all of the relevant circumstances, we conclude that the defendant's sentence was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]).

Accordingly, the judgment is affirmed.

---

4. *See* n 1, *supra.*

DICKERSON, LEVENTHAL and MILLER, JJ., concur.

Ordered that the judgment is affirmed.