People v Batista (2018 NY Slip Op 07445)





People v Batista


2018 NY Slip Op 07445


Decided on November 7, 2018


Appellate Division, Second Department


Leventhal, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 7, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
JOHN M. LEVENTHAL
BETSY BARROS
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI, JJ.


2014-11805
 (Ind. No. 910/11)

[*1]The People of the State of New York, respondent,
v
Anardo Batista, appellant.



APPEAL by the defendant, as limited by his motion, from a sentence of the Supreme Court (Gregory Lasak, J.), imposed December 3, 2014, and entered in Queens County, upon his plea of guilty, on the ground that the sentence was excessive.



Paul Skip Laisure, New York, NY (A. Alexander Donn of counsel), for appellant.
Richard A. Brown, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, and Anastasia Spanakos of counsel; Eleanor Reilly on the memorandum), for respondent.



LEVENTHAL, J.


OPINION & ORDER
The defendant was convicted, upon his plea of guilty, of robbery in the first degree, and his plea of guilty included a waiver of his right to appeal. The defendant appeals, as limited by his motion, from the sentence solely on the ground that the sentence was excessive. "[W]hen a defendant enters into a guilty plea that includes a valid waiver of the right to appeal, that waiver includes any challenge to the severity of the sentence" (People v Lopez, 6 NY3d 248, 256). Therefore, we must determine whether the defendant validly waived his right to appeal. Although we hold that the defendant validly waived his right to appeal, precluding review of his contention that the sentence imposed was excessive, we take the opportunity to respectfully urge our trial courts to give greater attention to the colloquy used in taking a waiver of the right to appeal.
On November 5, 2010, codefendant Jorge Paret ordered a pizza to be delivered to a certain location in Queens. Paret and the defendant planned to take property from the delivery person. When the delivery person (hereinafter the victim) arrived by scooter, Paret beat the victim and took the victim's wallet. Paret told the defendant to get the bat that was in Paret's truck. The defendant used the bat to strike the victim's head many times. The defendant then drove away on the victim's scooter. The victim was treated for multiple skull fractures and bleeding in his brain, and he underwent two brain surgeries.
The defendant, as part of a negotiated disposition, entered a plea of guilty to robbery in the first degree and was promised a sentence of a determinate term of imprisonment of 14, 15, 16, or 17 years plus 5 years of postrelease supervision.
During the plea proceeding, there was discussion regarding the defendant waiving his right to appeal:
"THE COURT: All right. Do you understand that one of the terms of this plea agreement is that you will not exercise your right to appeal.
"THE DEFENDANT: Yes, sir.
"THE COURT: All right. Is there a right to appeal form executed here? Please uncuff the defendant.
"MR. WEINSTEIN [defense counsel]: He executed the waiver of appeal, your Honor.
"THE COURT: Mr. Batista, I have this form in front of me, the waiver of your right to appeal. Did you just sign that?
"THE DEFENDANT: Yes, sir.
"THE COURT: Did you discuss this with your attorney Mr. Weinstein before you signed it?
"THE DEFENDANT: Yes, sir.
"THE COURT: Did you understand all of those discussions?
"THE DEFENDANT: Yes.
"THE COURT: Were you satisfied with those discussions?
"THE DEFENDANT: Yes, sir.
"THE COURT: Did you sign this of your own free will, sir?
"THE DEFENDANT: Yes, sir.
"THE COURT: You realize that by waiving your right to appeal—Mr. Batista, when I am talking to you, look at me.
"THE DEFENDANT: I'm sorry.
"THE COURT: By waiving your right to appeal, you will be foreclosed forever from complaining about any errors that may have occurred in this proceeding. Do you realize that?
"THE DEFENDANT: Yes, sir.
"THE COURT: All right. And you signed this waiver of your own free will?
"THE DEFENDANT: Yes, sir."
A form, entitled "Waiver of Right to Appeal and Other Rights," bearing the signatures of the defendant, defense counsel, and the Supreme Court, reads, in part:
"1. Waiver of Right to Appeal: I acknowledge that I have been advised of, and waive, my right to appeal from the judgment of conviction or sentence. This includes, but is not limited to, my right to prosecute the appeal as a poor person and to have an attorney assigned in the event that I am indigent, and to submit a brief and/or have argument before the appellate court on any issues relating to the conviction and sentence.
"This waiver applies to all issues that may validly be waived."
Thereafter, the Supreme Court rendered the judgment of conviction, sentencing the defendant to a determinate term of imprisonment of 16 years plus 5 years of postrelease supervision.
The defendant appeals, as limited by his motion, from the sentence. He contends that he did not validly waive his right to appeal and that the sentence imposed was excessive and should be reduced as a matter of discretion in the interest of justice.
In New York, a criminal defendant has the right to appeal from a judgment of conviction and sentence (see People v Yavru-Sakuk, 98 NY2d 56, 59; People v Harrison, 85 NY2d 794, 796; People v Brown, 122 AD3d 133, 136; see also CPL 450.10; People v Pollenz, 67 NY2d 264). However, that "right to appeal may be waived as a condition of a sentence or plea bargain" (People v Seaberg, 74 NY2d 1, 5). To say that a defendant may waive the right to appeal means not that the defendant gives up the right to take an appeal, but that the defendant gives up the right to have the appellate court review most claims of error as well as whether the sentence imposed was excessive (see William C. Donnino, Supplemental Practice Commentaries, 2012 Waiver of appellate review, McKinney's Cons Laws of NY, CPL 450.10). While a valid waiver of the right to appeal does not preclude appellate review of certain claims, "generally, an appeal waiver will encompass any issue that does not involve a right of constitutional dimension going to the very heart of the process'" (People v Lopez, 6 NY3d at 255, quoting People v Hansen, 95 NY2d 227, 230). "Because only a few reviewable issues survive a valid appeal waiver, it is all the more important for trial courts to ensure that defendants understand what they are surrendering when they waive the right to appeal. Giving up the right to appeal is not a perfunctory step" (People v Lopez, 6 NY3d at 256).
"A waiver of the right to appeal is effective only so long as the record demonstrates that it was made knowingly, intelligently and voluntarily" (id.). "An appellate waiver meets this standard when a defendant has a full appreciation of the consequences of such waiver. To that end, a defendant must comprehend that an appeal waiver is separate and distinct from those rights automatically forfeited upon a plea of guilty" (People v Bradshaw, 18 NY3d 257, 264 [citation and internal quotation marks omitted]).
A trial court must review the waiver and determine whether it is voluntary, knowing, and intelligent "by considering all the relevant facts and circumstances surrounding the waiver, including the nature and terms of the agreement and the age, experience and background of the accused" (People v Sanders, 25 NY3d 337, 340 [internal quotation marks omitted]). "The trial court must also ensure that defendant's full appreciation of the consequences and understanding of the terms and conditions of the plea, including a waiver of the right to appeal, are apparent on the face of the record" (id. at 340 [internal quotation marks omitted]).
Here, the defendant validly waived his right to appeal (see People v Sanders, 25 NY3d 337; People v Ramos, 7 NY3d 737). The defendant answered in the affirmative when the Supreme Court asked, "Do you understand that one of the terms of this plea agreement is that you will not exercise your right to appeal." The court's phrasing served to differentiate the rights the defendant gave up by pleading guilty from the right to appeal the defendant gave up as part of this plea agreement. The defendant also answered in the affirmative when the court later asked, "By waiving your right to appeal, you will be foreclosed forever from complaining about any errors that may have occurred in this proceeding. Do you realize that?" This question provided some explanation of the nature of the right to appeal and the consequences of waiving it, and was met with an affirmative response. Additionally, the defendant acknowledged signing the written waiver form, and answered that he discussed it with his attorney before he signed it, that he understood all those discussions, that he was satisfied with those discussions, and that he signed it of his own free will. Granted, whether the appeal waiver is valid in this case presents a very close question given, inter alia, that the on-the-record explanation of the nature of the right to appeal and the consequences of waiving it was terse and included no reference to a higher court or the Appellate Division; the defendant had a limited education, having stopped attending school in the eighth grade; and he had minimal prior experience with the criminal justice system, having been adjudicated a youthful offender but not having been convicted of a felony previously. Nonetheless, the record before us, consisting of the oral colloquy and the detailed written waiver, sufficiently demonstrates that the defendant knowingly, voluntarily, and intelligently waived his right to appeal.
People v Ramos (7 NY3d 737) supports our conclusion. In Ramos, the defendant executed a written waiver that "explained the appellate process" (id. at 738). Specifically, the [*2]written waiver, as revealed in People v Bradshaw (18 NY3d 257), advised the defendant that he had a "right to take an appeal (CPL 450.10), to prosecute the appeal as a poor person and to have an attorney assigned in the event that [he was] indigent, and to submit a brief and/or argue before an appellate court on any issues relating to [his] conviction and sentence" (id. at 270 [Read, J., dissenting] [internal quotation marks omitted]). The Ramos defendant was also told by the trial court that he was waiving "any and all rights to appeal" such that there not only would be no trial, but there would be no appeal, and thus, that the conviction and sentence were "now final" (id. at 266 [internal quotation marks omitted]). The Court of Appeals held, in Ramos, that the defendant's waiver of the right to appeal was effective because "any ambiguity" in the oral colloquy was cured by the detailed written waiver of the right to appeal (People v Ramos, 7 NY3d at 738). The written waiver in this case contains substantially similar language to the written waiver in Ramos, suggesting that here, as in Ramos, any ambiguity in the oral colloquy was cured by the detailed written waiver of the right to appeal.[FN1]
Although we hold the appeal waiver valid here, precluding review of the defendant's contention that the sentence imposed was excessive (see e.g. People v Hallums, 158 AD3d 819), we take the opportunity to respectfully urge our trial courts to give greater attention to the colloquy used in taking a waiver of the right to appeal. As the case at bar illustrates,
"[w]hile a terse colloquy may sometimes be sufficient in cases involving written waivers, in order to ensure that the defendant's appeal waiver will be effective and not rise or fall on highly nuanced facts, it is advisable for the trial courts to engage in a comprehensive colloquy, which clearly places on the record the defendant's understanding of the nature of the right to appeal and the consequences of waiving it" (People v Brown, 122 AD3d at 140 [citation omitted]).
"In that manner, the trial court can be satisfied that the defendant's decision to waive the right to appeal was the product of free and informed deliberation and the appellate court can reach the same determination upon a review of the record" (id. at 140-141 [citation omitted]).
In Brown, this Court set forth an example of the kind of thorough colloquy that should be conducted where a defendant agrees to waive the right to appeal (id. at 144-145). This Court explained that:
"Generally, such a thorough explanation should include an advisement that, while a defendant ordinarily retains the right to appeal even after he or she pleads guilty, the defendant is being asked, as a condition of the plea agreement, to waive that right. Ideally, a defendant should then receive an explanation of the nature of the right to appeal, which essentially advises that this right entails the opportunity to argue, before a higher court, any issues pertaining to the defendant's conviction and sentence and to have that higher court decide whether the conviction or sentence should be set aside based [*3]upon any of those issues. The defendant should also be told that appellate counsel will be appointed in the event that he or she were indigent. The trial courts should then explain the consequences of waiving the right to appeal, i.e., that the conviction and sentence will not receive any further review, and shall be final. The trial courts must be sure to obtain, on the record, an affirmative response from the defendant that he or she understands the rights as explained, that the defendant is giving up those rights, and that the defendant is doing so voluntarily after discussing same with counsel" (id. [footnote omitted]).
Moreover, the Criminal Jury Instructions & Model Colloquies, available online through the New York State Unified Court System's website, include a model colloquy for the waiver of the right to appeal. That model colloquy provides:
"Next, a defendant ordinarily retains the right to appeal even after pleading guilty. In this case, however, as a condition of the plea agreement, you are asked to waive your right to appeal.
"First, what is an appeal? An appeal is a proceeding before a higher court, an appellate court. If a defendant cannot afford the costs of an appeal or of a lawyer, the state will bear those costs. On an appeal, a defendant may, normally through his/her lawyer, argue that an error took place in this court which requires a modification or reversal of the conviction. A reversal would require either new proceedings in this court or a dismissal. Do you understand?
"By waiving your right to appeal, you do not give up your right to take an appeal by filing a notice of appeal with this court and the District Attorney within 30 days of the sentence. But, if you take an appeal, you are by this waiver giving up the right to have the appellate court consider most claims of error, and whether the sentence I impose, whatever it may be, is excessive and should be modified. As a result, the conviction by this plea and sentence will normally be final. Do you understand?
"[Optional: Among the limited number of claims that will survive the waiver of the right to appeal are: [a defendant's competency to stand trial, a defendant's constitutional right to a speedy trial], the voluntariness of this plea, the validity of this waiver, and the legality of the sentence. Do you understand?]
"Have you spoken to your lawyer about waiving your right to appeal?
"Are you willing to do so in return for the plea and sentence agreement?
"Do you waive your right to appeal voluntarily, of your own free will and choice?" (NY Model Colloquies, Waiver of Right to Appeal [footnotes omitted]).
While it is true that no particular litany is required to obtain a valid appeal waiver, and that trial courts are entrusted with discretion in determining, in the first instance, whether an appeal waiver is valid (see People v Sanders, 25 NY3d at 341; People v Brown, 122 AD3d at 143-144), we respectfully remind our trial courts of the availability of resources such as Brown and the model colloquy, and respectfully urge our trial courts to give greater attention to the colloquy used in taking a waiver of the right to appeal. Some commentators have argued that courts should not enforce appeal waivers (see e.g. Nancy Gertner, Having the Right to Appeal Is an Issue of Fairness, [*4]NY Times, https://www.nytimes.com/roomfordebate/2012/08/19/do-prosecutors-have-too-much-
power/having-the-right-to-appeal-is-an-issue-of-fairness [updated Feb. 4, 2016; last accessed Aug. 1, 2018]; Gregory M. Dyer & Brendan Judge, Note, Criminal Defendants' Waiver of the Right to AppealAn Unacceptable Condition of a Negotiated Sentence or Plea Bargain, 65 Notre Dame L Rev 649). Yet, approximately 30 years ago, the Court of Appeals "conclude[d] that the public interest concerns underlying plea bargains generally are served by enforcing waivers of the right to appeal" (People v Seaberg, 74 NY2d at 10). A waiver of the right to appeal is meant to advance finality and hold parties to their bargains (see id.). Far too often, however, trial courts fail to conduct a thorough colloquy to ensure that a defendant understands the important right she or he is being asked to give up and that the People receive the benefit for which they bargained. Far too often, trial courts instead conduct a perfunctory appeal waiver colloquy that serves only as a pathway to future litigation. Far too often, this Court is compelled to hold invalid a bargained-for waiver of the right to appeal. Our research has shown that this Court has held an appeal waiver invalid in well over 200 appeals over the past five years. This problem is not confined to a certain trial judge or county (see e.g. People v Rodriguez, 160 AD3d 779 [Kings County]; People v Smith, 160 AD3d 664 [Orange County]; People v Cassadean, 160 AD3d 655 [Nassau County]; People v Solizgalvez, 159 AD3d 838 [Suffolk County]; People v Waldon, 157 AD3d 913 [Queens County]; People v Joyner, 156 AD3d 725 [Dutchess County]; People v Marrero, 153 AD3d 1364 [Richmond County]; People v Clarke, 144 AD3d 937 [Westchester County]; People v Camarda, 138 AD3d 884 [Putnam County]; People v Boone, 134 AD3d 945 [Rockland County]). In short, we are mindful of the time demands on our trial courts, but we must reiterate that the benefit to be derived from a thorough colloquy regarding the waiver of the right to appeal outweighs any burden imposed on the trial courts by a slight increase in the length of plea proceedings (see People v Brown, 122 AD3d at 145).
In light of our determination that the defendant's waiver of the right to appeal was valid, review of his excessive sentence claim is precluded.
Accordingly, the sentence is affirmed.
SCHEINKMAN, P.J., BARROS, CONNOLLY and IANNACCI, JJ., concur.
ORDERED that the sentence is affirmed.
SCHEINKMAN, P.J., concurs, and votes to affirm the sentence, with the following opinion, in which LEVENTHAL, BARROS, CONNOLLY and IANNACCI, JJ., concur:
I fully agree with the analysis and conclusions reached by Justice Leventhal in his thoughtful opinion. I write separately to express concerns with the seemingly ever-growing, fact-intensive "waiver of appeal" jurisprudence that has evolved out of the myriad of ad hoc and idiosyncratic colloquies utilized by individual criminal part jurists. It is time, perhaps even past time, to stress how important it is for trial courts to take the few additional moments necessary to assure themselves that any waiver of appeal is valid. The regular use of a model colloquy, such as the one referenced in the majority opinion and readily available on the New York State Unified Court System's website, would go a long way to more consistent and efficacious appellate review.
To begin with, it might be useful if we consider adjusting our terminology to more accurately reflect the legal conception at issue here. While we commonly speak of a defendant's waiver of the right to appeal, the fact is that a defendant who has "waived" the right to appeal may still take an appeal. However, if the waiver is valid, the issues that may be effectively reviewed on appeal are narrowed. Thus, the practice is better understood, I believe, as an appeal limitation.
As Justice Leventhal points out, there are claims, going to " the very heart of the process,'" that are not encompassed by a valid waiver of appeal, such as challenges to the voluntariness of a plea, to the legality of a sentence, to the defendant's competency, and to compliance with constitutional speedy trial requirements (People v Lopez, 6 NY3d 248, 255, quoting People v Hansen, 95 NY2d 227, 230; see People v Seaberg, 74 NY2d 1, 10). Nor, of course, as hundreds of our decisions attest, is a defendant precluded from contesting on a direct appeal the validity of the appeal waiver itself. A valid appeal waiver effectively forecloses resort to this Court's interest of justice jurisdiction, especially as it relates to a challenge to a sentence as being excessive (see People v Seaberg, 74 NY2d at 9).
Since an appeal may still be taken by a defendant, notwithstanding the existence of an appeal waiver, the true impact of an appeal waiver, if valid, is to limit the issues that may be [*5]considered on appeal. We should recognize that what is called a waiver of appeal, which suggests an absolute relinquishment of all appellate opportunity, is in reality a limitation on the issues that may be effectively reviewed on appeal (see William C. Donnino, Supplemental Practice Commentaries, 2012 Waiver of appellate review, McKinney's Cons Laws of NY, CPL 450.10).
The distinction between an appeal waiver and an appeal limitation takes on substantial practical significance when it is considered that trial counsel, despite having advised defendants with respect to their decisions to enter into appeal waivers as part of a plea bargain, are nevertheless obligated to advise their clients of their right to appeal and, if desired by the client, to promptly file and serve a timely notice of appeal (see 22 NYCRR 671.3; see also CPL 380.55). It would seem more likely to be comprehensible to one without formal legal training, and substantially less inconsistent, to identify the limitation on appeal issues as being what is—a limitation—from the outset, rather than having to explain that an appeal may be taken notwithstanding the "waiver" of appeal just executed moments earlier.
Waiver by a criminal defendant of the precious right of appeal was given judicial sanction by the Court of Appeals in its 1989 decision in People v Seaberg (74 NY2d 1). Seaberg, one of two cases decided under that title, arose in the context of a defendant who had been found guilty after a jury trial of two alcohol-related driving offenses, and in exchange for a particular sentence, the defendant agreed to waive his right to appeal (see id. at 6). However, notwithstanding the waiver, the defendant subsequently appealed and asserted that numerous trial errors warranted reversal of the defendant's convictions (see id.). In People v Smith, a companion case decided with Seaberg, the defendant was charged with several crimes in two separate indictments. The defendant agreed to plead guilty to some charges in satisfaction of all charges, and to the imposition of a specified sentence. As part of the bargain, the defendant agreed to waive his right to appeal. In both Seaberg and Smith, the Appellate Division dismissed appeals taken by the defendant.
In affirming the dismissals of the defendants' appeals, the Court of Appeals emphasized the State's interest in finality. The Court stated:
"We conclude that the public interest concerns underlying plea bargains generally are served by enforcing waivers of the right to appeal. Indeed, such waivers advance that interest, for the State's legitimate interest in finality extends to the sentence itself and to holding defendants to bargains they have made. While a defendant always retains the right to challenge the legality of the sentence or the voluntariness of the plea, the negotiating process serves little purpose if the terms of a carefully orchestrated bargain' can subsequently be challenged" (id. at 10, quoting People v Prescott, 66 NY2d 216, 220 [citation omitted]).
Balanced against the State's interest in finality of criminal judgments in support of the enforcement of appeal limitations is the equally significant interest in assuring that the waiver, or limitation, of the fundamental right to appeal be voluntary, knowing, and intelligent (see People v Seaberg, 74 NY2d at 11). The responsibility for assuring that a particular waiver satisfies the requirements for validity is upon the trial court, and while a signed, written instrument may supplement or support the proceedings taken in open court, an effective and probing oral colloquy, superintended by the trial court, is essential if the record is to reflect, as it must, that a defendant's agreement was given voluntarily, knowingly, and intelligently, in light of that defendant's age, experience, and background (see e.g. People v Sanders, 25 NY3d 337, 340-341; People v Bradshaw, 18 NY3d 257, 264-265).
Since Seaberg, the inclusion of an appeal waiver or limitation has seemingly become part and parcel of plea bargaining and the giving of an appeal waiver a standard part of the bargain struck. The Court of Appeals has eschewed the establishment of an absolute minimum that must be conveyed to a pleading defendant in the plea colloquy in order for the appeal limitation to be enforced (see People v Sanders, 25 NY3d at 341). The Court has stressed that it is best that sound discretion be exercised in cases on an individual basis, rather than impose a uniform procedure that would likely become a purely ritualistic device (see id.).
In 2017, over 15,600 felony guilty pleas were recorded in the superior trial courts in the 10 counties within the Second Judicial Department (see 40th Ann Rep of Chief Admin of Cts at 48-49). Also in 2017, 846 records on appeal were filed in criminal cases in this Court (see id. at [*6]44), which necessarily includes cases in which convictions were rendered upon trial, rather than by plea. Clearly, only a small percentage of the cases involving pleas are pursued on appeal. In that sense, it may be supposed that appeal limitation or waiver, whatever the terminology, may be part of the calculus of defendants in electing to forgo pursuing an appeal and, in that sense, may be of utility in achieving the final disposition of criminal cases.
On the other hand, as noted in Justice Leventhal's opinion, our research has shown that this Court has held an appeal waiver to be invalid in well over 200 appeals during the past five years. Our further research demonstrates that the three other Departments of the Appellate Division have had similar experiences. Specifically, during the past five years, the Appellate Division, Third Department, has held an appeal waiver to be invalid in at least 75 appeals. The Appellate Division, Fourth Department, has held an appeal waiver to be invalid on no less than 90 occasions during this same five-year period. And the Appellate Division, First Department, has held an appeal waiver to be invalid in at least 15 appeals over the past five years. Collectively, this reflects a conservative estimate of at least 380 published instances in which the Appellate Division has held an appeal waiver to be invalid during the past five years [FN2]. To the extent that appeal limitations are not perceived as effective, their role in rendering convictions final will not be effective either.
Also, the waiver or limitation of appeal is given as part of the consideration for the plea being offered to the defendant by the People; the major part of the consideration being, of course, either the opportunity to plead to a reduced charge or to receive a lessened sentence. Where a defendant successfully challenges the validity of the plea, the conviction is vacated and the original charging instrument is restored (see CPL 220.60[3]; People v Singh, 120 AD3d 1360). It may well be supposed that the prospect of a trial on the original, more serious charges and a concomitantly longer sentence is a significant deterrent to seeking to vacate a plea of guilty. But, even though the appeal waiver is part of the consideration for the plea bargain, no case has been found where the People have even suggested that a defendant's success in invalidating an appeal limitation should result in the invalidation of the plea, notwithstanding that the People, in theory, have been deprived of part of the consideration they bargained for. Since it appears that as a practical matter there is no adverse consequence that a defendant will sustain in the event that a challenge is made to the appeal limitation and is unsuccessful (other than the enforcement of the limitation), and since success on such a challenge opens the door to a possible sentence reduction in the interest of justice, the number of challenges to the validity of appeal limitations seems to be ever-growing.
While it is important to avoid turning the plea colloquies into unthinking formulaic rituals, we have seen that some individual criminal jurists have conducted only truncated and highly abbreviated inquiries addressing defendants' understanding of the appeal waiver, inquiries that fail to cover important principles, such as the distinction between the right to appeal and the other rights that are automatically forfeited upon a plea of guilty, whether the defendant had read a written waiver and discussed it with counsel before signing it, and whether the waiver applies only to the plea and not to the sentence. Similar ad hoc, idiosyncratic formulations are used by the same judges in case after case. As a result, we are required to devote countless hours comparing the inquiry conducted by a particular judge in a particular case with inquiries conducted by the same judge in other cases that we have already held to be effective or ineffective. Significant case law has developed which is unique to particular judges such that we have a growing volume of judge-specific jurisprudence. There are at least a handful of judges who have had appeal limitations invalidated more than a dozen times. It is extremely time-consuming to parse through the transcripts of pleas in hundreds of cases and to weigh the arguments presented in the briefs as to the validity or invalidity of appeal limitations in the context of highly nuanced factual settings. By way of contrast, review of whether a particular sentence is excessive is generally less time-intensive.
Resort to a model form of colloquy would substantially reduce the difficulties encountered by this Court, which is working diligently to address a substantial case backlog, provided, of course, that the criminal part judges retain, and use, the flexibility to undertake individualized inquiries as appropriate and take the time involved to truly assure that each defendant coming before them who has executed an appeal limitation has done so knowingly and voluntarily. The benefit to be derived from a thorough colloquy concerning the waiver of the right to appeal far [*7]outweighs any burden imposed on the trial courts by a minor increase in the duration of plea proceedings (see People v Brown, 122 AD3d 133, 145).
Moreover, if obtaining a valid appeal limitation is truly part of the bargained-for consideration received by the People in a plea bargain, then prosecutors, as a matter of self-interest, should play a proactive role in ensuring that a proper allocution is conducted in every instance in which a defendant agrees to waive or limit the right to appeal in connection with a negotiated sentence. While the court cannot delegate its responsibility to the prosecutor, the active participation by the prosecution, and if nothing else, the pointing out of any issues of concern, should be salutary in effect (see People v Bethune, 91 AD3d 966).
It may be questioned whether appeal limitations play a significant role in bringing finality to criminal proceedings. To be sure, appeal limitations have increased the burden to be overcome to obtain relief on appeal in individual cases, since there is often now a threshold argument as to the validity of the waiver, an issue that did not exist before Seaberg and its progeny. It is not our place to suggest, at this stage, whether appeal limitations should be insisted upon in each and every plea bargain. But, for as long as appeal waivers are part of the plea process, the courts need to assure themselves that appeal waivers entered into before them are executed knowingly, voluntarily, and intelligently, through an appropriately conducted oral inquiry, buttressed, where possible, with a written instrument, which has been reviewed by the defendant with counsel prior to signature and submission to the court.
In this case, I agree with my colleagues that the waiver of appeal is enforceable, and that we are precluded from reaching the merits of the defendant's excessive sentence contention. Accordingly, I would affirm the sentence.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1:We note that the instant written waiver form also includes statements indicating, in effect, that the defendant waived any issue that might arise with regard to a predicate felon adjudication or an enhanced sentence. These statements were inaccurate (see People v Callahan, 80 NY2d 273, 280; People v Salako, ___ AD3d ___, ___, 2018 NY Slip Op 06770, *1 [2d Dept 2018]; People v Smith, 160 AD3d 664, 665; People v Youmans, 106 AD3d 1036, 1036; People v Maglione, 305 AD2d 426, 426). Under the circumstances of this case, where, inter alia, the written waiver includes substantially similar language to the written waiver in Ramos, the defendant was neither adjudicated a predicate felon nor sentenced to an enhanced sentence, and he does not specifically challenge the written waiver's language, these inaccurate statements do not alter our conclusion that the record sufficiently demonstrates that the defendant knowingly, voluntarily, and intelligently waived his right to appeal (compare People v Payton, 109 AD3d 940, People v Mizhirumbay-Guaman, 109 AD3d 668, 668-669, and People v Edmunson, 109 AD3d 621, 622, with People v Salgado, 111 AD3d 859, 859-860, and People v Pittman, 48 AD3d 709). However, a written waiver containing these inaccurate statements should not be used in future cases.

Footnote 2:Notably, the volume of criminal appeals in the First, Third, and Fourth Departments is lower than it is in the Second Department.